**INTEGRATED TECHNOLOGIES LIMITED, Plaintiff,**

v.

**BIOCHEM IMMUNOSYSTEMS, (U.S.) INC., Defendant.**

No. C.A. 97–10627–DPW.

United States District Court, D. Massachusetts.

March 30, 1998.

Lee C. Bromberg, Bromberg & Sunstein, Boston, MA, Joel R. Leeman, Bromberg & Sunstein, Boston, MA, for plaintiff.

Fred A. Kelly, Jr., Beth O'Neill Maloney, Peabody & Brown, Boston, MA, for defendant.

## ORDER

WOODLOCK, District Judge.

The within recommendation is adopted on an order of this court.

## REPORT AND RECOMMENDATION REGARDING BIOCHEM IMMUNOSYSTEMS (U.S.), INC.'S MOTION TO DISMISS (DOCKET NO. 4)

KAROL, United States Magistrate Judge.

### I. *BACKGROUND*

This case is the latest saga in a long and exceptionally stormy business relationship. To understand plaintiff's claims and the pending motion to dismiss, some background is in order.

In April 1988, plaintiff, Integrated Technologies Limited ("ITL") (then known as Wilj International Limited and referred to herein as "plaintiff" or "ITL"), entered into an agreement (the "1988 Agreement") with defendant, BioChem Immunosystems (U.S.), Inc. or its predecessors in interest (collectively referred to herein as "defendant" or "BioChem"), for the design, development, manufacture, and sale by ITL to BioChem of a diagnostic immunoassay instrument known as the SR–1. The 1988 Agreement was modified in March 1990 by a First Amendatory Agreement. The First Amendatory Agreement is the subject of the present dispute. The parties subsequently entered into two other agreements: (1) a March 1991 agreement, which attempted to resolve some warranty disputes that had arisen between ITL and BioChem (the "1991 Warranty Settlement"), and (2) a Settlement Agreement and Release dated May 26, 1993 (the "Settlement Agreement"). Under the 1991 Warranty Settlement, ITL agreed to give BioChem a warranty allowance on BioChem's previous purchases of SR–1s. The allowance was in the amount of £779,964, less certain adjustments, including a reduction equal to the amount of certain royalty payments that BioChem would otherwise have owed ITL under the First Amendatory Agreement but which

ITL agreed to forego. Within eighteen months of their entering into the 1991 Warranty Settlement, the parties had another falling out, resulting in ITL's commencement of suit against BioChem in November 1992 in this court, C.A. No. 92–12748–K, ("*ITL I*"). The Settlement Agreement purported to settle *ITL I* and included, as one of its terms, the dismissal of that case, with prejudice. The stipulation of dismissal with prejudice was executed and filed on June 16, 1993.

Again, peace eluded the parties' grasp, and, on April 11, 1995, ITL commenced a second lawsuit in this court against BioChem, C.A. No. 95–10745–DPW ("*ITL II*"). In *ITL II*, which is still pending, ITL claims breach by BioChem of the Settlement Agreement, including failure by BioChem to fulfill certain payment obligations under the 1988 Agreement which BioChem allegedly reaffirmed in the Settlement Agreement. BioChem in turn asserts in a counterclaim breach by ITL of the 1991 Warranty Settlement.

In January 1997, ITL filed a motion in *ITL II* seeking leave to amend its complaint to add a claim for breach by BioChem of the First Amendatory Agreement. Specifically, the motion sought to add the following paragraph to the complaint:

> BioChem is also liable for breach of its obligation under the parties' First Amendatory Agreement to purchase from [ITL] 30% of its requirements of certain diagnostic instruments between March 1, 1990 and December 31, 1993, and to pay [ITL] certain royalties.

As a reason for not asserting such claim earlier, ITL maintained at a hearing before Judge Woodlock on January 27, 1997, that although it was a signatory to the First Amendatory Agreement, it had misplaced it and was, therefore, unaware of its provisions until BioChem produced a copy in April 1996.[1] Judge Woodlock denied ITL's motion, stating:

> [The motion] is not allowed for purposes of adding an additional claim here, which will

---

1. By the time ITL filed its motion for leave to amend, an additional ten months had passed since BioChem had first produced the First Amendatory Agreement and several weeks had passed since the close of discovery. ITL did not attempt to explain why it took these additional ten months for it to file its motion.

only delay the resolution of this lawsuit and appears to result from inexcusable negligence on the part of your client, negligence that's not brought to the attention of the Court until after there is a determination of the close of discovery here.[2]

■ ITL commenced the present lawsuit ("*ITL III*") against BioChem in March 1997 in direct response to this decision. The complaint in *ITL III* has two counts. Count I alleges a breach by BioChem of its obligation under the First Amendatory Agreement to make certain minimum purchases and to pay certain royalties. Count II is for an accounting "of BioChem's requirements of Instruments from March 1, 1990 until December 31, 1993" and "for the spare parts and Instruments on which it is required to pay royalties to ITL." Presently before the court is BioChem's motion under Fed.R.Civ.P. 12(b)(6) to dismiss both counts for failure to state a claim on which relief can be granted. Based upon various exhibits that it attaches to its motion and which set forth background information concerning *ITL II*, BioChem argues that the January 27, 1997 Order would effectively be reversed and the policy underlying Fed.R.Civ.P. 15 would be undercut if ITL were permitted to proceed with its complaint in *ITL III*. It also asserts in its motion that the equitable remedy of an accounting is not available to ITL under Massachusetts law because the parties are not in a fiduciary relationship and the damage issue that ITL seeks to raise is not so complicated that it cannot be resolved in an action at law. ITL vigorously opposes both of BioChem's arguments on the merits and disputes BioChem's statement of Massachusetts law regarding the conditions under which the equitable remedy of an accounting is available. It does not, however, take issue with BioChem's attempt to present its policy arguments in the context of a motion under Fed.R.Civ.P. 12(b)(6) or with BioChem's reliance on exhibits that it attaches to its motion. Taking my cue from the parties, I, too, shall assume that Fed.R.Civ.P. 12(b)(6) is an appropriate procedural device for raising policy arguments about the importance of judicial consistency and the need to vindicate Fed.R.Civ.P. 15 and that, in deciding this motion, I may take into account pleadings fried and orders entered in *ITL II*. See *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir.1993) (although court ordinarily may not, in deciding a motion to dismiss, consider matters outside the four corners of the complaint, there is a "narrow exception[ ] for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint").[3]

## II. *ANALYSIS*

Though the pending motion may not be a conventional one under Rule 12(b)(6), the conventional standard for deciding it surely applies. A complaint may be dismissed for failure to state a claim only if, accepting all the plaintiff's "well-pleaded factual averments" and indulging "every reasonable inference hospitable to" the plaintiff's case, "it clearly appears ... that the plaintiff cannot recover on any viable theory." *Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 52 (1st Cir.1990).

■ Applying this liberal standard, we may quickly dispose of BioChem's argument that ITL's claim for an accounting must be dismissed. According to BioChem, the equitable remedy of an accounting is available

---

2. As noted, BioChem is asserting in its counterclaim in *ITL II* that it is owed the balance of the original warranty allowance that remains outstanding under the 1991 Warranty Settlement. Under the terms of the 1991 Warranty Settlement, the original amount must be reduced, *inter alia*, by the amount, if any, of royalty payments foregone by ITL. Therefore, assuming BioChem establishes that ITL is indeed liable to it for that outstanding balance, the fact finder will presumably have to take BioChem's royalty obligations into account in order to determine how much of the original allowance remains outstanding. To that limited extent, the amount of royalties owing

by BioChem was always an issue in *ITL II*, and, presumably, will remain an issue in that case, notwithstanding ITL's unsuccessful attempt to add an affirmative claim to recover royalties, if any, in excess of the set-off amount.

3. By the same token, I shall accept, without expressing any opinion on, both parties' implicit assumption that state law-in this case the law of Massachusetts-determines whether a particular type of equitable remedy is available in a diversity case.

only if the parties are in a fiduciary relationship or if the account is so complicated that damages cannot conveniently be determined in an action at law. Assuming, without deciding, that BioChem's statement of Massachusetts law regarding the conditions under which an accounting is available is correct, the short answer to BioChem's argument is that it is far too soon to tell whether ITL's claim for contract damages and unpaid royalties is sufficiently complex to warrant an accounting. I therefore recommend that, to that extent, BioChem's motion to dismiss be **DENIED,** without prejudice to BioChem's right to renew it in the form of a motion for summary judgment, if warranted, following the close of discovery.[4]

Far more difficult is BioChem's argument that ITL's right to proceed here is foreclosed by the January 27, 1997 Order denying its motion for leave to amend in ITL II. Although not couched in terms of res judicata or claim preclusion (presumably because there has been no final judgment on the merits in *ITL II* ), BioChem's motion implicates the same policy concerns that inform that often perplexing, judicially-created doctrine. BioChem essentially raises the question of whether the denial of a motion to amend in an earlier case precludes the plaintiff from asserting in a later case the claims that were the subject of its unsuccessful motion. BioChem says it does; ITL, predictably, says it does not. The correct answer is, "It depends."

Putting aside for the moment the fact that *ITL II* is still pending and, thus, there has been no final adjudication of any relevant claim on the merits, the dimensions of the problem and some principles applicable to its resolution can best be illustrated and understood through some simple hypotheticals.

■ Consider first a simple contract dispute between a lessor and a lessee. Assume that, shortly before trial, plaintiff-lessor moves to amend his complaint to include a claim against defendant-lessee for a recent assault and battery that is completely unrelated to the contract dispute. If the court denies such motion on the ground that it would unduly delay and unnecessarily complicate the pending contract case, it is difficult to think of any policy reason why the plaintiff should not be permitted to commence a separate action for assault and battery, and, not surprisingly, case law would appear to support the plaintiff's right to do so. *See, e.g., Chaveriat v. Williams Pipe Line Co.,* 11 F.3d 1420, 1429 (7th Cir.1993) (noting that new claim that was the subject of a motion to amend denied by court could be raised in new lawsuit, where it arose "from a different act, at a different time, causing a different harm, from the first suit").[5]

■ Now consider a variation of the first case. Suppose the unrelated assault and battery was alleged to have occurred not just recently, but some twenty years earlier, and suppose further that the judge denied the motion for leave to amend not because the

---

4. As a practical matter, it is not clear why either party believes it matters whether the equitable remedy of an accounting is available under the circumstances of this case. Neither party discusses the way in which such remedy differs from the ordinary method by which a jury calculates damages for breach of contract in an action at law. Assuming the difference comes down to a question of whether damages, if any, are determined by the court or by a jury, the issue would appear to be moot, since ITL, the party seeking the accounting, has itself demanded a trial by jury. (Complaint at p. 5, Docket No. 1.)

5. Dictum in *King v. Hoover Group, Inc.,* 958 F.2d 219, 222–23 (8th Cir.1992), appears to be inconsistent with this proposition. There, the court stated without qualification: "It is well settled that denial of leave to amend constitutes res judicata on the merits of the claims which were the subject of the proposed amended pleading." *Id.* But the only case which the court cites to support this broad statement is *Carter v. Money Tree Co.,* 532 F.2d 113, 115 (8th Cir.), *cert. denied,* 426 U.S. 925, 96 S.Ct. 2636, 49 L.Ed.2d 380 (1976). In *Carter,* however, the denial of the motion to amend was based on the lower court's rejection of the *merits* of the proposed new claim. As discussed immediately below, where a court considers and rejects the merits of a claim in the context of denying a motion to amend, the court's decision does indeed constitute res judicata as to the proposed claim. In the more typical case, however, where the court does not reach the merits of the proposed new claim, denial of a motion to amend *may* foreclose plaintiff from raising the new claim in a separate proceeding, but, as illustrated in *Chaveriat,* it does not invariably do so.

new claim would have a disruptive effect on the pending contract dispute, but because it was clearly barred by the statute of limitations and, therefore, it would be futile to assert it. For purposes of the doctrine of claim preclusion, the denial of plaintiff's motion for leave to amend under these circumstances would be an adjudication on the merits of the claim for assault and battery. *See Kale v. Combined Ins. Co. of America,* 924 F.2d 1161, 1164 (1st Cir.) ("It is beyond peradventure that the dismissal of a claim as time-barred constitutes a judgment on the merits, entitled to preclusive effect."), *cert. denied,* 502 U.S. 816, 112 S.Ct. 69, 116 L.Ed.2d 44 (1991), citing *Rose v. Town of Harwich,* 778 F.2d 77, 80 (1st Cir.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2278, 90 L.Ed.2d 720 (1986). Therefore, even though the proposed new claim for assault and battery would not be foreclosed under the doctrine of claim preclusion as the result of any transactional relationship with the *original* contract claim, plaintiff would nevertheless be foreclosed under the doctrine of claim preclusion from asserting the assault and battery claim in a second lawsuit, because it already would have been adjudicated once on its *own* merits in the first lawsuit.

A third hypothetical case involves a claim which arises after the first action was filed and, unlike the claim in the first two hypotheticals, is transactionally related to the claim in the first action. Suppose, on the eve of or during trial of the simple contract dispute between lessor and lessee, a second lease payment becomes due and the lessee fails to make it. Lessor moves to amend his complaint to include the second payment, but the judge denies the motion on the ground that including it would disrupt the trial in the pending case. After the first case is completed, lessor commences a second lawsuit seeking to collect the second payment. Surely this claim would not be barred, even though it was transactionally related to the original claim and was the subject of an unsuccessful motion to amend. Rather, under ordinary principles of claim preclusion, the lessor would be permitted to pursue in a

second action any claim that had not arisen as of the time the original complaint was filed.

■ Now consider a fourth hypothetical case. At the time the lessor commences his action to recover the first missed payment, he is aware that the lessee has also failed to make a second payment under the same lease. Through inadvertence or as the result of tactical decision, however, he does not include a claim for that second payment in his original complaint. Later, on the eve of trial, he attempts to amend his complaint to include such claim. His motion to amend is denied on the ground that the new claim comes too late and would be too disruptive of the trial that is about to begin regarding the first missed payment. After the first case is over, the lessor attempts to assert a claim for the second payment in a separate lawsuit. Such claim should and would be precluded, even though plaintiff sought, but was denied, leave to assert it in the first case while the first case was still pending.[6] *See Huck on Behalf of Sea Air Shuttle Corp. v. Dawson,* 106 F.3d 45, 49 (3d Cir.) (holding that res judicata barred assertion of claims in second suit where claims could have been properly raised and litigated by plaintiff in first suit but were not and plaintiff's motion to amend complaint in first suit to include those claims was denied), *cert. denied,* —— U.S. ——, 117 S.Ct. 2458, 138 L.Ed.2d 215 (1997); Restatement (Second) of Judgments § 25 cmt. b (1982) ("It is immaterial that the plaintiff in the first action sought to prove the acts relied on in the second action and was not permitted to do so because they were not alleged in the complaint and an application to amend the complaint came too late."). If a claim is both transactionally related to one which is the subject of a pending lawsuit and was in existence at the time the first lawsuit was filed, then, for all the same policy reasons that underlie the doctrine of claim preclusion, it is incumbent on the plaintiff either to 1) include the second claim in the original complaint or 2) bring the second claim into the first action by a motion to amend filed

---

**6.** Plaintiff would, of course, be permitted to take an appeal in the original case from the denial of his motion to amend.

early enough to be allowed without undue disruption of the existing case. Neither the defendant nor the judicial system should have to bear the considerable expense or inconvenience of plaintiff's failure to do so.[7]

Finally, consider this fifth hypothetical. At the time the lessor sues the lessee for breach of contract, he also has a potential, unrelated claim against lessee for assault and battery that is not time-barred. He initially chooses not to include the tort claim in his contract case, but he later changes his mind. He therefore files a motion to amend his complaint for breach of contract to include the unrelated tort claim, but the judge, without reaching the merits of the tort claim, denies the motion to amend purely on disruptiveness grounds. After the first case is completed, plaintiff commences a second lawsuit for assault and battery. If he had not attempted to insert the assault and battery claim into the contract action via a motion to amend, he would clearly have had the right to assert it in a separate lawsuit, because, even though it was ripe when the first lawsuit was brought, it was transactionally unrelated to the claim in that first case. From the standpoint of policy and logic, the fact that his motion to amend was denied on the ground of disruptiveness should have no bearing on the question whether plaintiff should be permitted to assert such claim in a separate lawsuit. Where the second claim is transactionally unrelated to the first and the denial of the motion to amend is not based on the merits of such claim, the plaintiff should be permitted to assert such claim in a second case, even though the second claim was ripe when the first one was brought.

Three general principles appear to emerge upon consideration of the foregoing five hypotheticals:

■ 1. The fact that a judge has denied a motion to amend which seeks leave to add a new claim to an existing case should have no bearing either way on the question whether plaintiff may file the new claim as a separate lawsuit, *unless* the denial of leave to amend is itself based on, and thus constitutes, an adjudication of the merits of such proposed new claim.

■ 2. If the denial of the motion for leave to amend is based on and thus constitutes an adjudication on the merits of the proposed new claim, plaintiff may appeal such denial, but he may not assert such claim in a second lawsuit, and this is true even if the second claim is unrelated to the first and arose after the first lawsuit was commenced.

■ 3. If the denial of the motion for leave to amend is based not on the merits of the proposed new claim but only on concern about its disruptive effect on the pending litigation, ordinary principles of claim preclusion should determine whether the plaintiff should be permitted to assert such new claim in a separate lawsuit. Under such principles, if the second claim is not transactionally related to the first or did not arise until after the first lawsuit was filed, it may be asserted in a later-filed lawsuit, notwithstanding the court's denial of leave to amend in the first lawsuit.[8]

7. BioChem purports to rely on *Walton v. Eaton Corp.*, 563 F.2d 66 (3d Cir.1977) (en banc), a case in which the two claims not only arose out of the same transaction, but were also virtually identical. In *Walton*, the plaintiff filed one employment discrimination complaint in which she waived her right to a jury trial; then, after she apparently changed her mind and decided that she wanted a jury after all, she filed a second, virtually identical complaint in which she included a jury demand. The district court refused to permit plaintiff to have a jury trial. In affirming, the Third Circuit treated the second complaint as an indirect attempt by plaintiff to amend her first complaint to add a jury claim, which attempt it deemed to have been properly rejected by the district court. *See id.* at 71–72. It was in this unusual context that the court made the following statement: "[T]he court must insure that the plaintiff does not use the incorrect procedure of filing duplicative complaints for the purpose of circumventing the rules pertaining to the amendment of complaints, Fed.R.Civ.Proc. 15, and demand for trial by jury, Fed.R.Civ.Proc. 38." *Id.* at 71. BioChem quotes this statement in support of its argument that it would thwart the policy underlying Fed.R.Civ.P. 15 if ITL were permitted to proceed here, but the statement, in context, is clearly inapposite to the instant case.

8. This third principle is not at all inconsistent with *United States v. McGann*, the case on which BioChem relies for its argument that "end runs" around denials of motions to amend should not be permitted. To the contrary, the court there recognized that the determination of whether a plaintiff would be permitted to file a second

The discussion thus far has assumed that the plaintiff whose motion to amend was denied in the first action waits until that action is completed before filing his second complaint. Does the analysis change if the plaintiff, as in this case, jumps the gun and attempts to bring his second action while the first action is still pending? The initial reaction to this question might be to ask the further question, "What reason is there to think it might?" The mason is this: as a rule, claim preclusion does not bar the assertion of a second claim unless and until there has been a judgment on the merits of some prior claim. Presumably, this rule is grounded, at least in part, in basic notions of justice and fairness—every claimant is entitled to at least one determination of his or her claim on its merits. The question thus becomes whether this rule also applies here as well, and if so, with what result. To answer this question, we must first distinguish between two types of situations.

■ In the first situation, the denial of the motion to amend is based upon consideration of the merits of the proposed new claim, *i.e.,* on the ground that it would be futile to attempt to assert the new claim because of some insurmountable problem such as the running of the statute of limitations. In this situation, which is not the one presented here,[9] the fact that the first action is still pending at the time the plaintiff attempts to file his second complaint is of no concern and may be disregarded, because the plaintiff has had one adjudication on the merits of the very claim that he attempts to assert in the second complaint. That single adjudication on the merits is all that he is entitled to, both as a matter of justice and under the classic

formulation of the doctrine of claim preclusion. He may appeal the denial of his motion to amend, but he may not litigate his claim in a second proceeding.

■ In the second situation, the motion to amend is denied not on the merits, but on the ground that the proposed new claim will have a disruptive effect on the pending litigation. The first thing to note about this case is that the issue now under consideration has no impact unless the second claim is transactionally related to the first and arose before the first lawsuit was filed. Under the general principles set forth above, unless both such conditions were satisfied, such claim would not be barred in any event, regardless of whether it was filed before or after the first action was concluded.

■ But suppose the second claim is transactionally related to the first and that it was ripe at the time the first claim was filed. Is it fair to preclude such claim from being asserted in a second lawsuit which is filed before the first lawsuit has been concluded, *i.e.,* before there has been an adjudication of any claim on the merits? The issue this hypothetical poses might appear at first to be one merely of timing, since the first case will presumably be resolved on its merits one way or the other in the ordinary course, and, once it is, there would be no impediment to the application of claim preclusion to bar the second claim. On this basis, defendant might attempt to brush off the concern as a mere technicality that should not affect the outcome. The problem with such argument is that the assumption that there will eventually be a disposition on the merits in the first case is not necessarily correct. For example,

complaint following the denial of a motion to amend would be made with reference to familiar principles of res judicata. It stated:

> [T]he government is attempting an end run around the denial of its motion to amend its complaint by filing a new one, or as it is occasionally put, attempting to accomplish indirectly what it could not accomplish directly. The law's response to such attempts is generally a negative one. Whether this is the appropriate response in this case will, it is submitted, be determined by the doctrine of *res judicata.*

*United States v. McGann,* 951 F.Supp. 372, 375 (E.D.N.Y.1997). Applying the doctrine of res judi-

cata, a plaintiff will not be permitted to pursue the rejected claim in a new lawsuit if the denial of the motion to amend was based on the merits of the proposed new claim or if the proposed new claim was transactionally related to the first set of claims and was in existence when the first complaint was filed (as was the case in *McGann*).

9. As noted, Judge Woodlock did not deny ITL's motion to amend on the merits, but because he felt it would "delay the resolution" of *ITL II,* combined with ITL's lack of a satisfactory explanation for its failure to amend sooner.

it is possible that, after the court has denied the motion to amend in the first case, it dismisses the first case, either *sua sponte* or on a motion by defendant, on the ground that the court lacks subject matter or personal jurisdiction. A dismissal for lack of jurisdiction is not an adjudication on the merits for claim preclusion purposes and, therefore, would not preclude the plaintiff from reasserting the first claim in a different forum. *See, e.g., Nowak v. Ironworkers Local 6 Pension Fund,* 81 F.3d 1182, 1188 (2d Cir.1996) (stating that "because a dismissal pursuant to Rule 12(b)(1) [for lack of subject matter jurisdiction] is not on the merits, it can have no res judicata effect"); *Eason v. Linden Avionics, Inc.,* 706 F.Supp. 311, 317 (D.N.J. 1989) (noting that a judgment dismissing an action for lack of personal jurisdiction is not on the merits for purposes of claim preclusion). If he does so, should he be permitted to add a second count for the transactionally related claim that was previously the subject of his unsuccessful attempt to amend? There would appear to be no reason not to permit him to do so, since, presumably, the first court also lacked jurisdiction to decide the motion to amend, and, in any event, the policy underlying the doctrine of claim preclusion would have little weight where the first case is being recommenced, in its entirety, in a new forum. But what if, by the time plaintiff re-filed the first action in the new forum, a second court had already dismissed on "claim splitting" grounds the second action which plaintiff attempted to bring immediately after his motion to amend in the first action had been denied and before the first action was dismissed on jurisdictional grounds?

Although no case was found directly on point, there is precedent for the dismissal of a second-filed case on grounds of judicial economy and "claim splitting," where the case with which it was transactionally related and on which the dismissal was based was still pending in another court. *See Oxbow Energy, Inc. v. Koch Industries, Inc.,* 686 F.Supp. 278, 280–82 (D.Kan.1988). There is

no need, however, to consider the applicability of the rationale of such case to the present one. This is because, for reasons that will become apparent when the general principles set forth above are applied to the particular circumstances of this case, the doctrine of claim preclusion would not bar all claims that are the subject of the pending lawsuit even if the claims asserted in *ITL II* had been fully adjudicated on their merits.

Turning, then, to the matter of application, it has already been noted that, in denying ITL's motion to amend in *ITL II,* Judge Woodlock did not address the merits of such claim. Therefore, the general principle that a claim which is the subject of an unsuccessful motion to amend is barred by the doctrine of claim preclusion if the denial was based on the merits of the claim has no application here.

This leaves for consideration the general principle that a plaintiff may not assert in a second lawsuit a claim that is transactionally related to a claim that is the subject of a prior lawsuit and that existed as of the time the first lawsuit was filed. If this principle applied here, it would raise the issue considered earlier: should the second lawsuit be dismissed even though there has been no adjudication on the merits in the first case? But this principle does not apply here, or, at least, it does not apply at the motion to dismiss stage, because there is at least one "viable theory" in *ITL III* by which ITL may be entitled to recovery. In its complaint in *ITL III,* ITL asserts that the First Amendatory Agreement, which was signed on March 1, 1990, required BioChem to pay royalties for a period often years, or, presumably, until the year 2000. Therefore, even assuming, *arguendo,* that claims under the First Amendatory Agreement are transactionally related to the claims that are the subject of *ITL II,* claim preclusion does not bar such claims to the extent they are for royalties that were not due until sometime after the complaint in *ITL II* was filed in 1995.[10] Whether claims for earlier royalties or for other breaches of

---

10. For the same reason, even assuming, *arguendo,* that the dismissal with prejudice of *ITL I* in June 1993 would bar ITL's attempt to assert claims for unpaid royalties that were owing as of

the date that the complaint in that case was filed, it would not preclude ITL from asserting claims for royalties the payment of which did not mature until after such date.

the First Amendatory Agreement would be precluded is an issue that was not briefed and need not be decided at the Rule 12(b)(6) stage. It is sufficient for purposes of deciding BioChem's motion to dismiss to note that there are some claims that ITL seeks to assert to which the doctrine of claim preclusion does not apply and which are, therefore, "viable." BioChem's motion (Docket No. 4) must therefore be **DENIED,** and the question of whether a claim that would otherwise be barred by claim preclusion should be dismissed before the first claim has been adjudicated on the merits becomes academic.

### III. *SUMMARY AND RECOMMENDATION*

For all the foregoing reasons, I recommend that BioChem Immunosystems (U.S.) Inc.'s Motion to Dismiss (Docket No. 4) be **DENIED.**

### IV. *IMPORTANT NOTICE OF RIGHT TO OBJECT AND WAIVER OF RIGHT TO APPEAL FOR FAILURE TO DO SO WITHIN TEN DAYS*

The parties are hereby advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court **WITHIN 10 DAYS** of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has indicated that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court's order entered pursuant to this Report and Recommendation. *See United States v. Valencia–Copete,* 792 F.2d 4, 5–6 (1st Cir.1986); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega,* 678 F.2d 376, 379 (1st Cir.1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 605 (1st Cir.1980);

*see also Thomas v. Arn,* 474 U.S. 140, 148–149, 106 S.Ct. 466, 471–472, 88 L.Ed.2d 435 (1985), *reh'g denied,* 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986).

January 20, 1998.