NORTHERN ASSURANCE COMPANY OF AMERICA, as Subrogee of Michael and Carole Morrell, Plaintiff–Appellant,

v.

SQUARE D COMPANY, Defendant–Appellee.

Docket No. 99–7153

United States Court of Appeals, Second Circuit.

Argued: Sept. 28, 1999

Decided: Jan. 13, 2000

Steven L. Smith, Philadelphia, PA (Elaine M. Rinaldi, Cozen and O'Connor, Philadelphia, PA, of counsel), for Appellant.

John R. Simon, Rochester, N.Y. (Hallenbeck, Lascell, Norris & Heller, Rochester, NY, of counsel), for Appellee.

Before: MESKILL, MINER and PARKER, Circuit Judges.

MESKILL, Circuit Judge:

This is an appeal from a judgment of the United States District Court for the Northern District of New York, McAvoy, C. J., dismissing Northern Assurance Company of America's (Northern) complaint against Square D Company (Square D) on grounds of *res judicata*. The district court held that Northern's claims were barred because of the denial of Northern's motion to amend its earlier complaint to add Square D as a defendant in a suit brought against another party. Because Northern was under no obligation to bring its claims against Square D in the earlier suit, we hold that the denial of Northern's motion to amend its complaint in the earlier suit does not bar its claims in this suit.

Reversed, vacated and remanded.

## BACKGROUND

This suit arises out of a November 1995 fire at the home of Michael and Carole Morrell. The Morrells recovered from their insurer, Northern. After investigating the circumstances surrounding the fire, Northern believed that the electric compa-

ny, New York State Electric & Gas Corporation (NYSEG), was at fault and, as subrogee of the Morrells, sued NYSEG on September 9, 1996 in the Northern District of New York, alleging negligence, strict liability and breach of warranty claims (hereinafter *Northern I*). On January 28, 1997, NYSEG responded by adding Square D (defendant-appellee in the instant case) and the Tree Preservation Company and its employees (collectively "TPC") as third-party defendants. NYSEG claimed that either Square D, the manufacturer of the home's circuit breaker, or TPC, the company that trimmed the trees around the Morrell's home, ultimately was responsible for the fire.

Judge Pooler assigned the case to Magistrate Judge Hurd for pre-trial proceedings. The magistrate judge and the parties agreed on a scheduling order, pursuant to Fed.R.Civ.P. 16, setting April 15, 1997 as the deadline for joinder of parties. Just before the deadline, Northern requested a one week extension to add TPC as a first-party defendant. The extension was granted and TPC, but not Square D, was added as a first-party defendant. Northern claims that, despite NYSEG's allegations against Square D, it did not pursue claims against Square D at this time because Northern did not have enough independent evidence to pursue that claim in good faith.

In early October 1997, Northern's expert electrical engineer performed more tests to determine the cause of the fire. According to Northern, these tests demonstrated for the first time that it had a claim against Square D. On December 1, 1997, several months after the deadline for joinder of parties, Northern petitioned the court for leave to amend its complaint a second time in order to bring claims against Square D directly. The magistrate judge denied leave to amend the complaint on February 4, 1998, finding

that it was untimely, that Northern had failed to explain the delay and that Northern had not presented any evidence to form the basis of a claim against Square D. The magistrate judge did not address the merits of Northern's claims. Northern did not appeal the decision or seek reconsideration before Judge Pooler.

Instead, Northern filed this suit against Square D in the Southern District of New York on May 6, 1998, alleging essentially the same claims it attempted to add in *Northern I*. Subsequently, by consent of the parties, the case was transferred to the Northern District of New York, where it was assigned to Chief Judge McAvoy.[1] Square D moved to dismiss on grounds of *res judicata*, arguing that the magistrate judge's denial of Northern's petition to amend in the first suit constituted *res judicata* as to the claims contained within the denied amended complaint. The district court granted Square D's motion and dismissed the action on December 29, 1998. *See Northern Assurance Co. of America v. Square D Co.*, 1998 WL 938943, at *3 (N.D.N.Y. Dec. 29, 1998) (hereinafter *Northern II*). Northern's petition for reconsideration was denied. *See Northern Assurance Co. of America v. Square D Co.*, 1999 WL 123575 (N.D.N.Y. Mar. 1, 1999). This appeal followed.

## DISCUSSION

### A. *Jurisdiction*

Northern is a Massachusetts corporation with its principal place of business in Boston. Square D is a Delaware corporation with its principal place of business in New York City. Northern alleged damages in excess of $100,000. As such, federal jurisdiction exists based on diversity of citizenship, pursuant to 28 U.S.C. § 1332. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

---

1. Judge Pooler became a Circuit Judge on June 19, 1998. *Northern I* was then apparently assigned to Chief Judge McAvoy.

### B. *Claim Preclusion*

Square D claims, and the district court held, that claim preclusion bars Northern's claims against Square D. It argues that the magistrate judge's denial of Northern's leave to amend its complaint in *Northern I* bars the claims contained in the proposed amended complaint. We disagree. While denial of leave to amend a complaint may have preclusive effect in some cases, claim preclusion is unavailable here because the claims sought to be added to the first suit were against an independent party and were not required to be brought in that suit.

■ The doctrine of claim preclusion, not to be confused with issue preclusion or collateral estoppel,[2] holds that "a prior decision dismissed 'on the merits' is binding in all subsequent litigation between the same parties on claims arising out of the same facts, even if based upon different legal theories or seeking different relief on issues which were or might have been litigated in the prior action but were not." *EFCO Corp. v. U.W. Marx, Inc.*, 124 F.3d 394, 397 (2d Cir.1997); *see also* Restatement (Second) of Judgments § 19 (1982) ("A valid and final personal judgment rendered in favor of the defendant bars another action by the plaintiff on the same claim."). The import of claim preclusion is that it operates in two ways: (1) it bars claims that were brought and decided in a prior litigation; and (2) it bars all other claims relating to the same transaction against the same defendant that could have been brought at that time.[3]

■ To understand why claim preclusion is not a bar to the current suit, it is necessary to contrast our case with the typical situation where claim preclusion would apply after a denial of leave to amend. In those cases the plaintiff is seeking to add additional claims against the *same* defendant and leave to amend is denied without reaching the merits of the claim. The decision to grant or deny leave to amend rests within the discretion of the trial court. *See John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir.1994). The courts are generally in agreement that these new claims should be barred. *See EFCO*, 124 F.3d at 399–400 (plaintiff sought leave to amend to add additional claims against the same defendant in state court, the court denied leave, and we found that claim preclusion "applies to the claims sought to be added in the proposed amended complaint"); *see also Landscape Properties v. Whisenhunt*, 127 F.3d 678, 683 (8th Cir. 1997) (after plaintiff's motion to amend its complaint to add additional claims against the same defendants was denied in first suit, in subsequent suit those claims were barred by claim preclusion); *Huck v. Dawson*, 106 F.3d 45, 49–50 (3d Cir.1997) (same); *King v. Hoover Group*, 958 F.2d 219, 222–23 (8th Cir.1992) (same, noting that "[i]t is well settled that denial of leave to amend constitutes res judicata on the merits of the claims which were the subject of the proposed amended pleading"); *Johnson v. SCA Disposal Services*, 931 F.2d 970, 974–76 (1st Cir.1991) (same); Restatement (Second) of Judgments § 25, cmt. b (1982) ("It is immaterial that the plaintiff in the first action sought to prove

---

**2.** The district court used the term *res judicata* to describe the doctrine that it believed barred the suit. The term *res judicata*, however, is more appropriately defined as encompassing two separate and distinct wings of preclusion law, claim preclusion and issue preclusion, *see generally* 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4402 (1981 & Supp.1999) (describing cases acknowledging claim and issue preclusion as separate doctrines within the broader concept of *res judi-* cata ). Claim preclusion is at issue in our case.

**3.** We need not decide whether Northern's claim against Square D could have been brought at the time of *Northern I* because it is unnecessary to our decision. Regardless of whether or not Northern was fully aware of its claim against Square D when it sued NY-SEG, it was under no obligation to add both parties to the initial suit, as we explain later.

the acts relied on in the second action and was not permitted to do so because they were not alleged in the complaint and an application to amend the complaint came too late."). *But see Mayes v. Local 106, Int'l Union of Operating Eng'rs*, 1999 WL 60135, at *3 (N.D.N.Y. Feb.5, 1999) (finding that "the interests of justice favor examination" of claims that were not allowed to be added to a prior action).

■ Where the plaintiff is seeking to add additional claims against the same defendant and leave to amend is denied, claim preclusion is appropriate. When claim preclusion is applied in these cases, it is not the actual decision to deny leave to amend that forms the basis of the bar. *See, e.g., Nilsen v. City of Moss Point, Miss.*, 701 F.2d 556, 564 (5th Cir.1983) (en banc) (finding no distinction between a plaintiff electing to advance additional claims after final judgment and a plaintiff advancing additional claims in a motion to amend its complaint, implicitly recognizing that the actual decision denying leave would be irrelevant for claim preclusion purposes). Indeed, the decision denying leave to amend is usually based on factors such as timeliness or convenience (as in *Northern I*) and is not an adjudication "on the merits." In fact, the actual decision denying leave to amend is irrelevant to the claim preclusion analysis. *See Integrated Technologies Ltd. v. Biochem Immunosystems (U.S.)*, 2 F.Supp.2d 97, 103 (D.Mass. 1998) ("The fact that a judge has denied a motion to amend which seeks leave to add a new claim to an existing case should have no bearing either way on the question whether plaintiff may file the new claim as a separate lawsuit, *unless* the denial of leave to amend is itself based on ... the merits."). It may be a specific event upon which claim preclusion can focus, but the decision itself is not necessary for claim preclusion to apply.

Instead, the bar is based on the requirement that the plaintiff must bring all claims at once against the same defendant relating to the same transaction or event. *See, e.g., Nilsen*, 701 F.2d at 563 ("[T]heories which were the subject of an untimely motion to amend, filed in the earlier action, 'could have been brought' there."). The claims will be barred through the normal rule barring claims that should have been brought, regardless of whether the plaintiff seeks to add them to the initial suit. *See Integrated Technologies*, 2 F.Supp.2d at 103 (finding, as a general principle, that where denial of leave to amend is not based on the actual merits of the claims, "ordinary principles of claim preclusion should determine whether the plaintiff should be permitted to assert such new claim in a separate lawsuit"). Thus, the actual decision denying leave to amend is no more than a proxy to signify at what point claims have been forfeited due to a plaintiff's failure to pursue all claims against a particular defendant in one suit. The bar, however, turns on normal principles of claim preclusion, *i.e.*, whether Northern was required to bring its claims in the initial suit.

■ Unlike the situation described above, our case involves a plaintiff seeking to add claims against a new defendant. Northern was not required to bring its claims against Square D in *Northern I* because they are independent claims. Northern has separate and distinct causes of action against each defendant, since NY-SEG and Square D allegedly are joint tortfeasors and are not in privity.[4] North-

---

4. There is no privity between NYSEG and Square D. Although courts have expanded the concept of privity beyond its literal meaning, *see Alpert's Newspaper Delivery v. New York Times Co.*, 876 F.2d 266, 270 (2d Cir.1989) ("The issue is one of substance rather than the names in the caption of the case; the inquiry is not limited to a traditional privity analysis."), NYSEG and Square D have no connection other than as opponents in *Northern I*. Absent an indemnification relationship, *see Garver v. Brown & Co. Sec. Corp.*, 1998 WL 54608, at *4–5 (S.D.N.Y. Feb.10, 1998), we see no reason to suggest that they would have a sufficient alignment of interests to warrant a finding of privity. *Compare Central*

ern has "as many causes of action as there are defendants to pursue." 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4407, at 52–53 (1981); *see* Restatement (Second) of Judgments § 49 cmt. a (1982) (for preclusion purposes "the claim against others who are liable for the same harm is regarded as separate"); *see also Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.,* 56 F.3d 359, 367 (2d Cir.1995) (quoting Wright, Miller & Cooper and the Restatement). If Northern chose to sue one defendant, but not the other, the unadjudicated claim would survive the first judgment, because "[w]hen a litigant files consecutive lawsuits against separate parties for the same injury, the entry of a judgment in the prior action does not bar the claims against other potentially liable parties." *Central Hudson Gas,* 56 F.3d at 367; *see also White v. Kelsey,* 935 F.2d 968, 970 (8th Cir.1991) ("A claim is not terminated against one person who may be liable for a loss by a judgment against another person liable for the loss.").[5]

Applying these principles, the denial of Northern's motion for leave to amend in *Northern I* cannot preclude Northern's claims against Square D in this action. Because Northern was under no obligation to bring the claims in *Northern I,* it is not barred by the normal operation of claim preclusion.

### C. *Policy and Judicial Economy*

■■■ Square D argues that even if claim preclusion does not apply, the poli-

cies behind it, achieving finality and preventing piecemeal and wasteful litigation, warrant dismissal of Northern's claims. This argument is unpersuasive. Northern attempted, albeit belatedly, to bring its claim against Square D in *Northern I.* Had leave to amend been granted, the second suit would have been avoided. Northern should not be penalized for its failure to succeed in its attempt to have all claims resolved in one lawsuit.[6]

Claim preclusion should produce a sense of finality between the parties. When a party is victorious, it should not have to defend that victory again. In the present case, Square D's victory, if it can be called that, was in not being added as a first-party defendant in *Northern I.* There was no decision on the merits of Northern's claim that Square D's circuit breaker was responsible for the house fire. Finality will not be upset by allowing this action to proceed. Furthermore, Square D will not be prejudiced. Had Northern not attempted to add its claims against Square D in *Northern I,* Square D would face the same claims as it will after this decision.

■■■ Square D also claims that wise judicial administration requires dismissal of Northern's action. We disagree. While dismissal of a complaint may be justified "if the 'claims, parties, and available relief do not significantly differ between the two actions,'" *Serlin v. Arthur Andersen & Co.,* 3 F.3d 221, 223 (7th Cir.1993) (quoting *Ridge Gold Standard Liquors v. Joseph E. Seagram & Sons,* 572 F.Supp. 1210, 1213 (N.D.Ill.1983)), the scarcity of judicial re-

---

*Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.,* 56 F.3d 359, 367–68 (2d Cir.1995) ("[P]rivity bars relitigation of the same cause of action against a new defendant known by a plaintiff at the time of the first suit where the new defendant has a *sufficiently close relationship* to the original defendant to justify preclusion.") (emphasis added).

**5.** Northern will not be permitted double recovery. While multiple parties may be liable to Northern, there can be only one satisfaction of the judgment. *See St. Clair v. Eastern Air Lines,* 302 F.2d 477, 479 (2d Cir.1962)

("To the extent that the judgments represent compensation for the same injury, there can be no question that the plaintiff is only entitled to a single recovery.").

**6.** Square D also claims that Northern should have moved to reconsider the denial or appealed the denial. Faced with the burden of proving that the denial of leave to amend was an abuse of discretion, Northern cannot be faulted for deciding to institute a separate suit, something it had a right to do initially.

sources alone does not justify denying a party the opportunity to litigate a claim. Square D is unable to cite, and we are unable to find, any case where a second suit against an independent party was dismissed as duplicative. NYSEG and Square D are significantly different, independent entities with opposing interests. *Cf. Curtis v. DiMaio,* 46 F.Supp.2d 206, 215–16 (E.D.N.Y.1999) (dismissing suit as duplicative, but only after finding that although parties were not identical, their interests were sufficiently aligned). Northern's claims against NYSEG and Square D are not duplicative.

Furthermore, it is unlikely that this action will waste judicial resources. The decision to consolidate this case with *Northern I* or try it separately is left to the district court, which is in the best position to manage its resources.

 Finally, Square D argues that we should not permit Northern to ignore the magistrate judge's ruling by filing suit separately and thus ignoring the effect of Fed.R.Civ.P. 16 and the deadline for joinder of parties. *See United States v. McGann,* 951 F.Supp. 372, 379 (E.D.N.Y. 1997) ("[T]he government is attempting an end run around the denial of its motion to amend its complaint by filing a new one, ... attempting to accomplish indirectly what it could not accomplish directly. The law's response to such attempts is generally a negative one."). However, the magistrate judge's ruling only said that it was too late to join claims directly against Square D in *Northern I* by amending the complaint. The ruling did not say that Northern forfeited or waived any claims against Square D. That issue was not before the magistrate judge. Neither did he consider the merits of Northern's claim. His ruling was limited to the procedural aspects of *Northern I*. It did not foreclose other valid procedural routes available to Northern. *See, e. g., SEC v. First Jersey Sec.,* 101 F.3d 1450, 1464 (2d Cir.1996) (in initial suit, plaintiff not required to bring claims arising after the filing of that suit,

and its election not to add subsequent claims to the suit "is not penalized by application of res judicata to bar a later suit on that subsequent conduct"); *Nilsen,* 701 F.2d at 561 ("[U]tilization of one procedural vehicle to vindicate a substantive right does not preclude employing a parallel procedural vehicle to vindicate the same substantive right."). If this case is consolidated with *Northern I,* it will be via a procedural route different from the method foreclosed by the magistrate judge's denial of the motion for leave to amend the complaint in *Northern I.* Thus, dismissal is not warranted, either under claim preclusion or on policy grounds.

## CONCLUSION

For the reasons stated herein, the district court's decision dismissing Northern's suit on grounds of claim preclusion is reversed. The judgment is vacated and the case is remanded for further proceedings.