# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

Argued September 24, 2013      Decided February 11, 2014

No. 13-5061

SABINA LOVING, ET AL.,
APPELLEES

v.

INTERNAL REVENUE SERVICE, ET AL.,
APPELLANTS

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:12-cv-00385)

---

*Gilbert S. Rothenberg*, Attorney, U.S. Department of Justice, argued the cause for appellants. With him on the briefs were *Tamara W. Ashford*, Principal Deputy Assistant Attorney General, *Richard Farber* and *Patrick J. Urda*, Attorneys.

*David W. Foster* was on the brief for *amici curiae* Former Commissioners of Internal Revenue in support of appellants.

*Charles Harak* was on the brief for *amici curiae* National Consumer Law Center, et al. in support of appellants.

*Dan Alban* argued the cause for appellees. With him on the brief were *William H. Mellor*, *Scott G. Bullock*, and *Ari S. Bargil*.

*Patrick J. Smith* was on the brief for *amici curiae* Ronda Gordon, et al. in support of appellees.

Before: KAVANAUGH, *Circuit Judge*, and WILLIAMS and SENTELLE, *Senior Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH.

KAVANAUGH, *Circuit Judge*: The federal income tax code is massive and complicated. So it is not surprising that many taxpayers hire someone else to help prepare their tax returns.

In 2011, responding to concern about the performance of some paid tax-return preparers, the IRS issued new regulations. Among other things, the new regulations require that paid tax-return preparers pass an initial certification exam, pay annual fees, and complete at least 15 hours of continuing education courses each year. The IRS estimates that the new regulations will apply to between 600,000 and 700,000 tax-return preparers.

As statutory authority for the new regulations, the IRS has relied on 31 U.S.C. § 330. Originally enacted in 1884, that statute authorizes the IRS to "regulate the practice of representatives of persons before the Department of the Treasury." 31 U.S.C. § 330(a)(1). In the first 125 years after the statute's enactment, the Executive Branch never interpreted the statute to authorize regulation of tax-return

preparers. But in 2011, the IRS decided that the statute in fact did authorize regulation of tax-return preparers.

In this case, three independent tax-return preparers contend that the IRS's new regulations exceed the agency's authority under the statute. The precise question is whether the IRS's statutory authority to "regulate the practice of representatives of persons before the Department of the Treasury" encompasses authority to regulate tax-return preparers. The District Court ruled against the IRS, relying on the text, history, structure, and context of the statute. We agree with the District Court that the IRS's statutory authority under Section 330 cannot be stretched so broadly as to encompass authority to regulate tax-return preparers. We therefore affirm the judgment of the District Court.

I

Originally passed by Congress and signed by President Chester A. Arthur in 1884, Section 330 of Title 31 authorizes the Secretary of the Treasury – and by extension, the IRS, a subordinate agency within the Treasury Department – to "regulate the practice of representatives of persons before the Department of the Treasury." 31 U.S.C. § 330(a)(1). Before admitting a person to practice as a representative, the IRS may require the applicant to demonstrate "good character," "good reputation," "necessary qualifications to enable the representative to provide to persons valuable service," and "competency to advise and assist persons in presenting their cases." *Id.* § 330(a)(2). The statute also empowers the IRS to discipline any representative who is "incompetent," "disreputable," "violates regulations prescribed under" Section 330, or who "with intent to defraud, willfully and knowingly misleads or threatens the person being represented or a prospective person to be represented." *Id.* § 330(b).

Such representatives may be fined, or suspended or disbarred from practice. *Id.*

In longstanding regulations implementing Section 330, the IRS has maintained standards of competence for attorneys, accountants, and other tax professionals appearing in adversarial proceedings before the agency. Covered individuals who fail to comply with those requirements may be censured, suspended from practice, disbarred from practice, or monetarily sanctioned.

In 2011, after an IRS review found problems in the tax-preparation industry, the IRS issued a new rule regulating tax-return preparers, a group that had not previously been regulated pursuant to Section 330. *See* Regulations Governing Practice Before the Internal Revenue Service, 76 Fed. Reg. 32,286 (June 3, 2011). (The rule was technically issued by the Department of the Treasury, of which the IRS is a part.) A tax-return preparer is a person who "prepares for compensation, or who employs one or more persons to prepare for compensation, all or a substantial portion of any return of tax or any claim for refund of tax under the Internal Revenue Code." 26 C.F.R. § 301.7701-15(a). The new 2011 regulations require tax-return preparers to register with the IRS by paying a fee and passing a qualifying exam. 31 C.F.R. §§ 10.3(f)(2), 10.4(c), 10.5(b). Each year after the initial registration, a tax-return preparer must pay an additional fee and complete at least 15 hours of continuing education classes. *Id.* § 10.6(d)(6), 10.6(e).

Plaintiffs in this case are three independent tax-return preparers who would be subject to the new requirements. They filed suit seeking declaratory and injunctive relief to prevent enforcement of the new regulations. On cross motions for summary judgment, the District Court ruled in

favor of the plaintiffs, concluding that "together the statutory text and context unambiguously foreclose the IRS's interpretation of 31 U.S.C. § 330." *Loving v. IRS*, 917 F. Supp. 2d 67, 79 (D.D.C. 2013). The District Court permanently enjoined the tax-return preparer regulations. The IRS moved in the District Court for a stay of the District Court's decision and asked to keep the regulations in place pending appeal. The District Court denied the stay motion.

The IRS filed a timely notice of appeal disputing the District Court's construction of Section 330. The IRS also filed a stay motion in this Court to keep the regulations in place pending appeal. That motion was denied. *Loving v. IRS*, No. 13-5061, 2013 WL 1703893 (D.C. Cir. Mar. 27, 2013).

Our review of the District Court's statutory interpretation is de novo. *See, e.g.*, *Judicial Watch, Inc. v. FBI*, 522 F.3d 364, 367 (D.C. Cir. 2008).

II

The question in this case is whether the IRS's authority to "regulate the practice of representatives of persons before the Department of the Treasury" encompasses authority to regulate tax-return preparers. 31 U.S.C. § 330(a)(1). The IRS says it does. Under *Chevron*, we must accept an agency's authoritative interpretation of an ambiguous statutory provision if the agency's interpretation is reasonable. *See Chevron U.S.A. Inc. v. NRDC*, 467 U.S. 837 (1984). In determining whether a statute is ambiguous and in ultimately determining whether the agency's interpretation is permissible or instead is foreclosed by the statute, we must employ all the tools of statutory interpretation, including "text, structure, purpose, and legislative history." *Pharmaceutical Research & Manufacturers of America v. Thompson*, 251 F.3d 219, 224

(D.C. Cir. 2001); *see also Chevron*, 467 U.S. at 843 n.9. "No matter how it is framed, the question a court faces when confronted with an agency's interpretation of a statute it administers is always, simply, *whether the agency has stayed within the bounds of its statutory authority*." *City of Arlington v. FCC*, 133 S. Ct. 1863, 1868 (2013).

In our view, at least six considerations foreclose the IRS's interpretation of the statute.

*First* is the meaning of the key statutory term "representatives." In its opening brief, the IRS simply asserts that there "can be no serious dispute that paid tax-return preparers are 'representatives of persons.'" IRS Br. 31 n.11. Beyond that ipse dixit, however, the IRS never explains how a tax-return preparer "represents" a taxpayer. And for good reason: The term "representative" is traditionally and commonly defined as an agent with authority to bind others, a description that does not fit tax-return preparers. *See, e.g.*, OXFORD ENGLISH DICTIONARY 660 (2d ed. 1989) ([4] "One who represents another as agent, delegate, substitute, successor, or heir"); BLACK'S LAW DICTIONARY 1416 (9th ed. 2009) ([1] "One who stands for or acts on behalf of another . . . . See agent"); BALLENTINE'S LAW DICTIONARY 1096 (3d ed. 1969) ("An agent, an officer of a corporation or association, a trustee, executor, or administrator of an estate, or any other person empowered to act for another."); 45 U.S.C. § 151 ("The term 'representative' means any person or persons, labor union, organization, or corporation designated either by a carrier or group of carriers or by its or their employees, to act for it or them."); U.C.C. § 1-201(b)(33) ("'Representative' means a person empowered to act for another, including an agent, an officer of a corporation or association, and a trustee, executor, or administrator of an estate.").

Put simply, tax-return preparers are not agents. They do not possess legal authority to act on the taxpayer's behalf. They cannot legally bind the taxpayer by acting on the taxpayer's behalf. The IRS cites no law suggesting that tax-return preparers have legal authority to act on behalf of taxpayers. Indeed, a tax-return preparer who tried to act on the taxpayer's behalf would run into trouble with the IRS: Under the IRS regulation found at 26 C.F.R. § 601.504(a), "representation" of a taxpayer before the IRS requires formally obtaining the taxpayer's power of attorney, something tax-return preparers do not typically obtain when preparing returns. Moreover, because a tax-return preparer is not a representative, the taxpayer ordinarily must still sign and submit the return in his or her own name even when the taxpayer uses the services of a tax-return preparer.

Other IRS directives buttress the understanding that tax-return preparers are not representatives. For example, the IRS permits taxpayers to select any person as a "Third Party Designee" who may talk to the IRS about questions that arise during the processing of the taxpayer's return. *See* Third Party Authorization, Levels of Authority, IRS Publication 4019 (Oct. 2012). But as the instructions for the standard tax return form make clear, that third-party designee status is not the same as representative status or power of attorney: "You are not authorizing the designee to receive any refund check, bind you to anything (including any additional tax liability), or otherwise represent you before the IRS. If you want to expand the designee's authorization, see Pub. 947 [Practice Before the IRS and Power of Attorney]." 1040 Instructions 2012 at 77.

Of course, the meaning an agency attaches to a term in its regulations is not always the same as the meaning Congress intends to give that term when Congress includes it in

statutes. But an agency's use of a term can be valuable information not only about ordinary usage but also about any specialized meaning that people in the field attach to that term. That is particularly true when, as here, the term is one that the agency uses in a number of contexts. *Cf. FAA v. Cooper*, 132 S. Ct. 1441, 1449 (2012) ("when Congress employs a term of art, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken") (internal quotation marks omitted).

The tax-return preparer certainly *assists* the taxpayer, but the tax-return preparer does not *represent* the taxpayer. In light of the way the Code treats tax preparation, it would be quite wrong to say that a tax-return preparer "represents" the taxpayer in any meaningful legal sense. In short, the statute's use of the term "representative" excludes tax-return preparers.

*Second* is the meaning of the phrase "practice . . . before the Department of the Treasury." The IRS has long regulated service professionals such as attorneys and accountants who appear as representatives of taxpayers in adversarial tax proceedings before the IRS. Under its new regulations, however, the IRS expanded its definition of "practice" to cover tax-return preparers. According to the IRS, the "practice" of tax-return preparers consists of "preparing and signing tax returns and claims for refund, and other documents for submission to the Internal Revenue Service." 31 C.F.R. § 10.3(f)(2).

To be sure, "preparing and signing tax returns" could be considered a "practice" of sorts, particularly if the tax-return preparer is providing advice or making judgment calls about a taxpayer's liability. But Section 330 does not regulate the act of "practice" in the abstract. The statute instead addresses

"practice . . . *before the Department of the Treasury*." Although the exact scope of "practice before" a court or agency varies depending on the context, to "practice before" a court or agency ordinarily refers to practice during an investigation, adversarial hearing, or other adjudicative proceeding. *See, e.g.*, 35 U.S.C. § 32 (discussing "practice before the Patent and Trademark Office"); 26 U.S.C. § 7452 (practice before the tax court); 15 U.S.C. § 78d-3 ("Appearance and practice before" the SEC).

That is quite different from the process of filing a tax return. As the Supreme Court has explained, "[t]he Federal tax system is basically one of self-assessment, whereby each taxpayer computes the tax due and then files the appropriate form of return along with the requisite payment." *United States v. Galletti*, 541 U.S. 114, 122 (2004) (internal quotation marks omitted). Even when the IRS disagrees with a taxpayer's determination of the taxes due, the tax-return preparer is not invited to present any arguments or advocacy in support of the taxpayer's position. Instead, the IRS conducts its own ex parte, non-adversarial assessment of the taxpayer's liability. *See* 26 C.F.R. § 601.104(c); 26 U.S.C. § 6201-6204. Not until a return is selected for an audit, or the taxpayer appeals the IRS's proposed liability adjustments, does a taxpayer designate a representative to act on his or her behalf. *See* 26 U.S.C. § 7521 (procedures for "taxpayer interviews" during audits); 26 C.F.R. § 601.103(c), 601.106(c) (representation of taxpayers at appeals "conferences"). All of this underscores that tax-return preparers do not practice *before the IRS* when they simply assist in the preparation of someone else's tax return.

The meaning of "practice . . . before the Department" in Section 330(a)(1) is further illustrated by the next subsection

of the statute, Section 330(a)(2), which provides that the Secretary may:

> before admitting a representative to practice, require that the representative demonstrate –
>
> (A) good character;
>
> (B) good reputation;
>
> (C) necessary qualifications to enable the representative to provide to persons valuable service; *and*
>
> (D) competency to advise and assist persons *in presenting their cases*.

31 U.S.C. § 330(a)(2) (emphases added). With respect to the last clause of Section 330(a)(2)(D) – the reference to "presenting their cases" – the District Court succinctly and cogently explained: "Filing a tax return would never, in normal usage, be described as 'presenting a case.' At the time of filing, the taxpayer has no dispute with the IRS; there is no 'case' to present. This definition makes sense only in connection with those who assist taxpayers in the examination and appeals stages of the process." *Loving v. IRS*, 917 F. Supp. 2d 67, 74 (D.D.C. 2013).

In trying to sidestep the import of the Section 330(a)(2)(D) language, the IRS does not contend that preparing a tax return constitutes "presenting" a "case." (Some outside commentators take that view, but the IRS does not.) Rather, the IRS says that "presenting their cases" is irrelevant because the listed criteria in Section 330(a)(2) should be read disjunctively as if they were connected by an "or" instead of an "and." *See* IRS Br. 37-38, Reply Br. 10-12.

According to the IRS, not all of the criteria in Section 330(a)(2) apply to all persons regulated under that Section.

That is not a persuasive argument.  Most obviously, the statute uses the conjunctive "and" – not the disjunctive "or" – when listing the various requirements, a strong indication that Congress did not intend the requirements as alternatives.

The IRS's insistence that the criteria in Section 330(a)(2) must be read as alternatives is further undermined by reference to the language of Section 330's predecessor statute. The provisions now codified as Section 330(a)(2)(A)-(D) originally authorized the Secretary of the Treasury to require that representatives were "of good character and in good repute, possessed of the necessary qualifications to enable them to render such claimants valuable service, and *otherwise* competent to advise and assist such claimants in the presentation of their cases."  Act of July 7, 1884, ch. 334, sec. 3, 23 Stat. 258, 258-59 (emphasis added).  The use of the word "otherwise" clearly indicates that, as originally formulated, the language now contained in Section 330(a)(2)(A)-(C) is to be read in conjunction with, and in terms of, the presentation of cases.  That original language matters, particularly because Congress, when it adopted the current streamlined language in 1982, stated that it intended to do so "without substantive change."  *See* Pub. L. No. 97-258, 96 Stat. 877, 877 (1982).

To be sure, by their plain terms, the four requirements in Section 330(a)(2) are somewhat overlapping, as the IRS notes.  But that is not a reason for changing "and" to "or." After all, some overlap is common in laws of this kind that set forth qualifications to obtain a government benefit or license. And more broadly, lawmakers, like Shakespeare characters, sometimes employ overlap or redundancy so as to remove any

doubt and make doubly sure. *See* Abbe R. Gluck & Lisa Schultz Bressman, *Statutory Interpretation from the Inside – an Empirical Study of Congressional Drafting, Delegation, and the Canons: Part I*, 65 STAN. L. REV. 901, 934-35 (2013). Interpreting Section 330(a)(2) to have some modest overlap is far more reasonable than interpreting the statute, as the IRS does, to mean "or" when it says "and."

It is true, as the IRS points out, that the IRS's authority under Section 330(a)(2)(D) to require competence in "presenting their cases" is discretionary; the statute provides that the Secretary "may" do so. So we should not and do not over-rely on this contextual point. We merely think that Section 330(a)(2)(D) adds at least some color to the overall statutory picture here: On balance, it suggests that Congress, when it enacted Section 330(a)(2), envisioned that practice before the agency would involve traditional adversarial proceedings.

*Third* is the history of Section 330. The language now codified as Section 330 was originally enacted in 1884 as part of a War Department appropriation for "horses and other property lost in the military service." Act of July 7, 1884, ch. 334, sec. 3, 23 Stat. 258. It stated:

> [T]he Secretary of the Treasury may prescribe rules and regulations governing the recognition *of agents, attorneys, or other persons representing claimants before his Department*, and may require of such persons, agents and attorneys, before being recognized as representatives of claimants, that they shall show that they are of good character and in good repute, possessed of the necessary qualifications to enable them to render such claimants valuable service, and

> *otherwise* competent to advise and assist such claimants *in the presentation of their cases*.

*Id.* at 258-59 (emphases added).

That original language plainly would not encompass tax-return preparers. Even after tax-return preparation became a significant industry, moreover, Congress did not broaden the language. On the contrary, when Congress re-codified the statute in 1982, Congress simplified the phrase "agents, attorneys, or other persons representing claimants," to the current "representatives of persons." But importantly, as we have noted, Congress made clear *in the statute itself* that it intended no change to the statute's scope: The title of the amending legislation states that the 1982 Act was designed "[t]o revise, codify, and enact" the amended provisions "*without substantive change*." *See* Pub. L. No. 97-258, 96 Stat. 877, 877 (1982) (emphasis added).

The fact that Congress used the words "agents," "attorneys," "claimants," "otherwise," and "presentation of their cases" in the original version of the statute, and that Congress then expressly stated in the statute itself that it intended no change in meaning when it streamlined the statute in 1982, further indicates that the statute contemplates representation in a contested proceeding, not simply assistance in preparing a tax return.

*Fourth* is the broader statutory framework. "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Roberts v. Sea-Land Services, Inc.*, 132 S. Ct. 1350, 1357 (2012) (internal quotation marks omitted). Yet accepting the IRS's view of Section 330(a)(1) would effectively gut Congress's carefully articulated existing system for regulating tax-return preparers.

14

Over the years, Congress has enacted a number of targeted provisions specific to tax-return preparers, covering precise conduct ranging from a tax-return preparer's failing to sign returns to knowingly understating a taxpayer's liability. *See, e.g.*, 26 U.S.C. §§ 6694, 6695, 6713. Each of those statutory proscriptions comes with corresponding civil penalties. Congress has continued to revise those statutes. *See, e.g.*, Pub. L. No. 112-41, § 501(a), 125 Stat. 428, 459 (2011) (amending 26 U.S.C. § 6695(g) to increase penalties).

Under the IRS's view here, however, all of Congress's statutory amendments would have been unnecessary. The IRS, by virtue of its heretofore undiscovered carte blanche grant of authority from Section 330, would already have had free rein to impose an array of penalties on any tax-return preparer who "is incompetent," "is disreputable," "violates regulations prescribed under" Section 330, or "with intent to defraud, willfully and knowingly misleads or threatens the person being represented or a prospective person to be represented." 31 U.S.C. § 330(b). And that would have already covered all (or virtually all) of the conduct that Congress later spent so much time specifically targeting in individual statutes regulating tax-return preparers.

It is true that the views or understanding of later Congresses – such as those Congresses that enacted the targeted statutes regulating tax-return preparers – are not dispositive and sometimes can be a hazardous basis for interpreting the meaning of an earlier enacted statute such as Section 330. *See Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 185 (1994). That said, as the Supreme Court has reasoned in similar circumstances, we find at least some significance in the fact that multiple Congresses have acted as if Section 330 did not extend so broadly as to cover tax-return preparers. As the

Supreme Court has stated, "the meaning of one statute may be affected by other Acts, particularly where Congress has spoken subsequently and more specifically to the topic at hand." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000). So it is here.

*Fifth* is the nature and scope of the authority being claimed by the IRS. The Supreme Court has stated that courts should not lightly presume congressional intent to implicitly delegate decisions of major economic or political significance to agencies. *See Brown & Williamson*, 529 U.S. at 160 ("we are confident that Congress could not have intended to delegate a decision of such economic and political significance to an agency in so cryptic a fashion").

If we were to accept the IRS's interpretation of Section 330, the IRS would be empowered for the first time to regulate hundreds of thousands of individuals in the multi-billion dollar tax-preparation industry. Yet nothing in the statute's text or the legislative record contemplates that vast expansion of the IRS's authority. This is the kind of case, therefore, where the *Brown & Williamson* principle carries significant force. Here, as in *Brown & Williamson*, we are confident that the enacting Congress did not intend to grow such a large elephant in such a small mousehole. In short, the *Brown & Williamson* principle strengthens the conclusion that Section 330 does not encompass tax-return preparers.

*Sixth* is the IRS's past approach to this statute. Until 2011, the IRS never interpreted the statute to give it authority to regulate tax-return preparers. Nor did the IRS ever suggest that it possessed this authority but simply chose, in its discretion, not to exercise it. In 2005, moreover, the head of the IRS's Criminal Investigation Division testified to Congress that "[t]ax return preparers are not deemed as

individuals who represent individuals before the IRS." *Fraud in Income Tax Return Preparation: Hearing Before the Subcommittee on Oversight of the House Committee on Ways and Means*, 109th Congress (2005) (testimony of Nancy J. Jardini). At the same hearing, the National Taxpayer Advocate – the government official who acts as a kind of IRS ombudsperson – stated to Congress that "the IRS currently has no authority to license preparers or require basic knowledge about how to prepare returns." *Id.* (testimony of Nina E. Olson). The IRS issued a guidance document in 2009 that likewise emphasized that "[j]ust preparing a tax return [or] furnishing information at the request of the IRS . . . is not practice before the IRS. These acts can be performed by anyone." Practice Before the IRS and Power of Attorney, IRS Publication 947, at 2 (April 2009).

The IRS is surely free to change (or refine) its interpretation of a statute it administers. *See FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009). But the interpretation, whether old or new, must be consistent with the statute. And in the circumstances of this case, we find it rather telling that the IRS had never before maintained that it possessed this authority. *Cf. Financial Planning Association v. SEC*, 482 F.3d 481, 490 (D.C. Cir. 2007) ("an additional weakness" in SEC's interpretation of statute was that it "flouts six decades of consistent SEC understanding of its authority under" statute). In light of the text, history, structure, and context of the statute, it becomes apparent that the IRS never before adopted its current interpretation for a reason: It is incorrect.

* * *

In our judgment, the traditional tools of statutory interpretation – including the statute's text, history, structure,

and context – foreclose and render unreasonable the IRS's interpretation of Section 330.  Put in *Chevron* parlance, the IRS's interpretation fails at *Chevron* step 1 because it is foreclosed by the statute.  In any event, the IRS's interpretation would also fail at *Chevron* step 2 because it is unreasonable in light of the statute's text, history, structure, and context.  It might be that allowing the IRS to regulate tax-return preparers more stringently would be wise as a policy matter.  But that is a decision for Congress and the President to make if they wish by enacting new legislation.  The "role of this Court is to apply the statute as it is written – even if we think some other approach might accord with good policy." *Burrage v. United States*, __ S. Ct. __ (2014) (internal quotation marks and brackets omitted).  The IRS may not unilaterally expand its authority through such an expansive, atextual, and ahistorical reading of Section 330.  As the Supreme Court has directed in words that are right on point here, the "fox-in-the-henhouse syndrome is to be avoided . . . by taking seriously, and applying rigorously, in all cases, statutory limits on agencies' authority." *City of Arlington v. FCC*, 133 S. Ct. 1863, 1874 (2013).  We affirm the judgment of the District Court.

*So ordered.*

APPENDIX

## § 330. Practice before the Department

(a) Subject to section 500 of title 5, the Secretary of the Treasury may —

> (1) regulate the practice of representatives of persons before the Department of the Treasury; and
>
> (2) before admitting a representative to practice, require that the representative demonstrate —
>
> > (A) good character;
> >
> > (B) good reputation;
> >
> > (C) necessary qualifications to enable the representative to provide to persons valuable service; and
> >
> > (D) competency to advise and assist persons in presenting their cases.

(b) After notice and opportunity for a proceeding, the Secretary may suspend or disbar from practice before the Department, or censure, a representative who —

> (1) is incompetent;
>
> (2) is disreputable;
>
> (3) violates regulations prescribed under this section; or
>
> (4) with intent to defraud, willfully and knowingly misleads or threatens the person being represented or a prospective person to be represented.

The Secretary may impose a monetary penalty on any representative described in the preceding sentence. If the representative was acting on behalf of an employer or any firm or other entity in connection with the conduct giving rise to such penalty, the Secretary may impose a monetary penalty on such employer, firm, or entity if it knew, or reasonably should have known, of such conduct. Such penalty shall not exceed the gross income derived (or to be derived) from the conduct giving rise to the penalty and may be in addition to, or in lieu of, any suspension, disbarment, or censure of the representative.