# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued May 11, 2018          Decided March 1, 2019

No. 17-5204

BRITTANY MONTROIS, CLASS OF MORE THAN 700,000
SIMILARLY SITUATED INDIVIDUALS AND BUSINESSES, ET AL.,
APPELLEES

v.

UNITED STATES OF AMERICA,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:14-cv-01523)

———

*Gilbert S. Rothenberg*, Attorney, U.S. Department of Justice, argued the cause for appellant. With him on the briefs were *Jessie K. Liu*, U.S. Attorney, and *Richard Farber* and *Norah E. Bringer*, Attorneys.

*Jonathan E. Taylor* argued the cause for appellees. With him on the brief were *Deepak Gupta*, *William H. Narwold*, *Allen Buckley*, *Louis Bograd*, and *Christopher S. Rizek*. *Elizabeth S. Smith* entered an appearance.

*Allen Buckley* was on the supplemental brief for plaintiffs-appellees.

1

Before: GARLAND, *Chief Judge*, and SRINIVASAN and MILLETT, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* SRINIVASAN.

SRINIVASAN, *Circuit Judge*: Tax-return preparers are persons who prepare clients' tax returns for compensation. Internal Revenue Service regulations require preparers to obtain from the agency (and renew annually) a unique identifying number known as a Preparer Tax Identification Number, or PTIN. Preparers must list that PTIN on any return they prepare.

In 2010, the IRS began charging tax-return preparers a fee to obtain and renew PTINs. The fee is designed to recoup the costs to the agency of issuing and maintaining a database of PTINs. As authority to exact the PTIN fee, the IRS relies on the Independent Offices Appropriations Act, which allows federal agencies to charge fees for services in certain conditions. 31 U.S.C. § 9701.

A group of tax-return preparers filed a class action lawsuit challenging the PTIN fee. They argued that the IRS lacks authority under the Independent Offices Appropriations Act to charge them for obtaining (and renewing) PTINs and that the IRS's decision to charge the fee was arbitrary and capricious. The district court ruled in favor of the preparers, concluding that the IRS lacks statutory authority to charge the fee. The court issued an injunction barring the IRS from charging the PTIN fee and ordered the agency to refund previously collected fees.

We conclude that the IRS acted within its authority under the Independent Offices Appropriations Act in charging tax-return preparers a fee to obtain and renew PTINs. We further

conclude that the IRS's decision to charge the fee was not arbitrary and capricious. We thus vacate the judgment of the district court and remand for further proceedings, including an assessment of whether the amount of the PTIN fee unreasonably exceeds the costs to the IRS to issue and maintain PTINs.

I.

A.

The Internal Revenue Code defines a tax-return preparer as "any person who prepares for compensation" a federal income tax return or claim for refund. I.R.C. § 7701(36)(A). The Code establishes no professional constraints on who may act as a tax-return preparer, with the result that preparers range from uncredentialed persons to attorneys and certified public accountants. *See* Internal Revenue Service, Return Preparer Review 8–9 (December 2009), https://www.irs.gov/pub/irs-utl/54419l09.pdf. As of 2009, "a majority of U.S. taxpayers . . . rel[ied] on tax return preparers to assist them in meeting their federal tax filing obligations." *Id.* at 7.

In 1976, Congress enabled the IRS to require a preparer to list an identifying number on any return she prepared, and Congress specified that the identifying number would be the preparer's social security number. *See* Tax Reform Act of 1976, Pub. L. No. 94-455, § 1203(d), 90 Stat. 1520, 1691. Congress also imposed monetary penalties on preparers in certain circumstances for understating a taxpayer's liability or failing to list certain information on a return. I.R.C. §§ 6694, 6695. In addition, Congress gave the Department of Justice authority (in consultation with the IRS) to seek an injunction preventing tax-return preparers from engaging in unlawful conduct. I.R.C. § 7407.

In 1998, Congress, acting out of concern that "inappropriate use might be made of a preparer's social security number," S. Rep. No. 105-174, at 106 (1998), allowed the IRS to permit or require preparers to list a different identifying number on returns they prepared. I.R.C. § 6109(a), (d); *see* Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. No. 105-206, § 3710, 112 Stat. 685, 779. The IRS subsequently issued regulations allowing—but not requiring—preparers to obtain from the agency a unique Preparer Tax Identification Number (PTIN) and to list that PTIN, instead of a social security number, on any return they prepared. Furnishing Identifying Number of Income Tax Return Preparer, 64 Fed. Reg. 43,910 (Aug. 12, 1999) (codified at 26 C.F.R. pt. 1).

By 2009, the IRS had become concerned that many taxpayers were being "poorly served by some tax return preparers" due to preparers' inadequate education and training as well as deficiencies in the agency's compliance regime. Return Preparer Review 6; *see id.* at 33–37. Seeking to improve matters, the IRS issued three sets of regulations in 2010 and 2011.

*First*, the IRS sought to establish a credentialing and registration regime for tax-return preparers. It did so by requiring otherwise uncredentialed preparers—that is, preparers who are neither attorneys nor certified public accountants—to become "registered tax return preparers." Regulations Governing Practice Before the Internal Revenue Service, 76 Fed. Reg. 32,286, 32,286–87 (June 3, 2011). To become a registered tax-return preparer, a person would need to undergo a background check, pass a competency exam, and satisfy continuing education requirements. *Id.* at 32,287.

4

*Second*, the IRS required preparers to obtain a PTIN and renew it annually.  Furnishing Identifying Number of Tax Return Preparer, 75 Fed. Reg. 60,309, 60,309–10 (Sept. 30, 2010).  According to the agency, the "requirement to use a PTIN will allow the IRS to better identify tax return preparers, centralize information, and effectively administer the rules relating to tax return preparers." *Id.* at 60,309.  The IRS further noted that the PTIN requirement would benefit "tax return preparers and help maintain the confidentiality of [their] SSNs." *Id.*

*Third*, the IRS decided it would charge tax-return preparers a fee of roughly $50 (plus a vendor fee) to obtain and renew a PTIN.  The agency explained the fee would cover the costs of "the development and maintenance of the IRS information technology system" associated with the PTINs, as well as the costs of "the personnel, administrative, and management support needed to evaluate and address tax compliance issues, investigate and address conduct and suitability issues, and otherwise support and enforce the programs that require individuals to apply for or renew a PTIN."  User Fees Relating to Enrollment and Preparer Tax Identification Numbers, 75 Fed. Reg. 60,316, 60,316, 60,319 (Sept. 30, 2010).

B.

A group of tax-return preparers challenged the first set of regulations described above:  the registered-tax return preparer system establishing a registration and credentialing system for preparers.  The plaintiffs argued that the IRS lacks authority under the Internal Revenue Code to establish a licensing system for tax-return preparers.

Our court agreed and invalidated the registered tax-return preparer regulations. *Loving v. IRS*, 742 F.3d 1013 (D.C. Cir. 2014). Because our invalidation of the registered-tax return program meant that there was no longer an agency-administered credentialing scheme in effect, our decision in *Loving* had the effect of reinstating a regime in which anyone who wishes to prepare tax returns for others can do so as long as she obtains a PTIN (and pays the associated fee), without needing to satisfy any credential requirements. *Id.* at 1021–22.

In 2014, after we issued our decision in *Loving*, several tax-return preparers initiated the action now before us in this appeal. The preparers challenge the lawfulness of the IRS's assessment of a fee for providing them a PTIN. They argue that the PTIN fee is contrary to the Independent Offices Appropriations Act and is arbitrary and capricious.

While the case was pending before the district court, the IRS reduced the amount of the PTIN fee from $50 to $33 (not including a vendor fee). Preparer Tax Identification Number (PTIN) User Fee Update, 81 Fed. Reg. 52,766, 52,766 (Aug. 10, 2016). The IRS adjusted the PTIN fee in the wake of our decision in *Loving*. A portion of the original PTIN fee was to have been used to pay the costs of the registered tax-return preparer program invalidated in *Loving*, and the IRS reduced the amount of the PTIN fee to cover the costs of those portions of the PTIN program that remained in effect after *Loving*. *Id.*

The district court, after certifying a plaintiffs' class of tax-return preparers, granted summary judgment in the preparers' favor in relevant part. The court upheld the IRS's requirement that preparers obtain a PTIN. But the court invalidated the PTIN fee charged by the IRS on the ground that the fee violates

the Independent Offices Appropriations Act. *Steele v. United States*, 260 F. Supp. 3d 52 (D.D.C. 2017).

The court reasoned in part that, for an assessment to qualify as a fee under that Act as opposed to an unauthorized general tax, the assessment must relate to a specific benefit conferred to an identifiable set of users. But here, the court emphasized, essentially any person can obtain a PTIN after *Loving* invalidated the PTIN eligibility criteria, such that the PTIN program, in the court's view, could no longer be said to benefit a particular set of individuals rather than the public in general. *Id.* at 67. The court also rejected the IRS's argument that the PTIN fee could be sustained based on an interest in protecting tax-return preparers' social security numbers. The court believed that the agency had not adequately raised or explained that rationale when it issued the rule establishing the fee. *Id.*

The IRS now appeals.

## II.

Before addressing the merits of the IRS's arguments, we first assess whether the district court had jurisdiction over this case. We must assure ourselves of the existence of jurisdiction even though no party argues it is lacking. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998).

The specific question we confront is whether the jurisdictional exhaustion requirement applicable to suits for refunds under the Internal Revenue Code obligated the tax-return preparers to pursue their claims with the IRS before filing suit in federal court. *See* I.R.C. § 7422. We conclude that the exhaustion requirement is inapplicable in the circumstances of this case.

The exhaustion provision states that "[n]o suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary" of the Treasury. I.R.C. § 7422(a). Neither party believes that provision pertains to this case, and their belief is correct.

We understand § 7422(a)'s exhaustion requirement to pertain to actions seeking a refund of any "tax," "penalty," or "sum" collected under the Internal Revenue Code. The PTIN fee, by contrast, was established under the Independent Offices Appropriations Act, a statute that lies outside the Internal Revenue Code and that generally applies to all federal agencies. The tax-return preparers correspondingly bring their claims in this case under the general provisions of the Administrative Procedure Act, not under any refund provision in the Internal Revenue Code.

Our understanding of the scope of § 7422(a)'s exhaustion requirement is grounded in the provision's terms. In cases seeking "recovery of any . . . tax alleged to have been erroneously or illegally assessed or collected," the language of the provision limits its application to refund requests involving "internal revenue" taxes, *id.*—that is, those taxes collected under the Internal Revenue Code. *Cf. Horizon Coal Corp. v. United States*, 43 F.3d 234, 240 (6th Cir. 1994) (per curiam) ("[T]he dictates of § 7422(a) apply only to taxes imposed pursuant to Title 26.") And while the provision applies not just to "internal revenue taxes," but also to "any penalty" or "any sum" alleged to have been unlawfully or wrongfully collected, I.R.C. § 7422(a), we believe that, just as the

provision applies only to "internal revenue" taxes, it also pertains only to a "penalty" or "sum" that is collected under the Internal Revenue Code. That would encompass, for instance, penalties levied on a tax-return preparer for understating a client's liability on a tax return. *See id.* § 6694.

The conclusion that § 7422(a)'s exhaustion requirement applies only to penalties and sums assessed under the Internal Revenue Code follows from the recognition that the government imposes various taxes pursuant to authority outside the Code. *See Horizon Coal Corp.*, 43 F.3d at 236–37 (describing the reclamation fee imposed on coal mine operators under the Surface Mining Control and Reclamation Act of 1977, 30 U.S.C. § 1232, as a tax). In that light, a reading of the exhaustion provision that would apply only to "internal revenue taxes" but would extend to any "penalty" or "sum" at all (beyond the context of the Internal Revenue Code) would lead to anomalous results: it would mean that a taxpayer who wishes to challenge both a non–Title 26 tax and an associated penalty would be required to exhaust her penalty refund request, but not her related tax refund request, before filing suit. We do not understand Congress to have intended to require that sort of splitting of claims.

Relatedly, § 7422(a)'s exhaustion requirement calls for claims to be presented initially to the "Secretary," *i.e.*, the Secretary of the Treasury. And it would make little sense to understand Congress to have required payers of penalties and sums unrelated to the Internal Revenue Code (and, in many cases, imposed by entities other than the IRS) to nonetheless seek a refund from the Secretary of the Treasury. *See Horizon Coal Corp.*, 43 F.3d at 240. We thus conclude that § 7422(a) is not meant to reach the claims in this case.

That result coheres with the context and purpose of the provision. With claims challenging the collection of taxes or penalties assessed under the Internal Revenue Code, the IRS can correct any errors through its own administrative processes. But the IRS reports that it has no such administrative process to examine the lawfulness of its PTIN fee and to correct any errors associated with collecting that fee. Requiring the tax-return preparers to present their claims first to the IRS thus would neither promote efficient resolution of their claims nor serve § 7422(a)'s goal of "prevent[ing] surprise" and "giv[ing] adequate notice to the Service of the nature of the claim and the specific facts upon which it is predicated, thereby permitting an administrative investigation and determination," *Computervision Corp. v. United States*, 445 F.3d 1355, 1363 (Fed. Cir. 2006) (internal quotation marks omitted).

For those reasons, we conclude that § 7422(a) did not require the tax-return preparers to submit their claims to the IRS before bringing this action in federal court.

## III.

On the merits, the tax-return preparers contend that the PTIN fee is unlawful for two distinct reasons. First, they argue (and the district court agreed) that the Independent Offices Appropriations Act does not provide statutory authority for the fee. Second, they contend that the IRS's decision to impose the fee was arbitrary and capricious. We disagree on both counts.

## A.

We first consider whether the IRS had authority under the Independent Offices Appropriations Act to charge tax-return preparers a fee to obtain and renew a PTIN. The Independent

Offices Appropriations Act helps federal agencies recover the costs of services provided to beneficiaries. *See Nat'l Cable Tel. Ass'n, Inc. v. United States*, 415 U.S. 336, 337 n.1 (1974). Under the Act, the "head of each agency . . . may prescribe regulations establishing the charge for a service or thing of value provided by the agency." 31 U.S.C. § 9701(b).

The Supreme Court considered the Act in companion decisions issued on the same day in 1974. *Fed. Power Comm'n v. New England Power Co.*, 415 U.S. 345 (1974); *Nat'l Cable*, 415 U.S. 336. The Court "construe[d] the Act to cover only 'fees' and not 'taxes.'" *New England Power*, 415 U.S. at 349. That is because "[t]axation is a legislative function, and Congress . . . is the sole organ for levying taxes." *Nat'l Cable*, 415 U.S. at 340. The Court explained that fees, as opposed to taxes, are imposed on identifiable recipients of particular government services. *Id.* at 340–41; *New England Power*, 415 U.S. at 349. The Court thus understood the Act to give agencies authority to impose a "reasonable charge" on an "identifiable recipient for a measurable unit or amount of Government service or property from which [the recipient] derives a special benefit." *New England Power*, 415 U.S. at 349 (quoting OMB Circular No. A-25 (Sept. 23, 1959)).

The Act, that is, enables an agency to impose a fee only for "a service that confers a specific benefit upon an identifiable beneficiary." *Engine Mfrs. Ass'n v. EPA*, 20 F.3d 1177, 1180 (D.C. Cir. 1994). To justify a fee under the Act, then, an agency must show (i) that it provides some kind of service in exchange for the fee, (ii) that the service yields a specific benefit, and (iii) that the benefit is conferred upon identifiable individuals. *Id.*; *see Seafarers Int'l Union of N. Am. v. U.S. Coast Guard*, 81 F.3d 179, 184–85 (D.C. Cir. 1996). Here, the PTIN fee satisfies those conditions.

1.

We first assess whether the IRS provides a service in exchange for the PTIN fee.  We conclude it does:  the service of providing tax-return preparers a PTIN.  In particular, the IRS generates a unique identifying number for each tax-return preparer and maintains a database of those PTINs, enabling preparers to use those numbers in place of their social security numbers on tax returns.  The IRS devotes personnel and resources to managing the PTIN application and renewal process and developing and maintaining the database of PTINs. The provision of a PTIN, and the associated functions, constitute the provision of a service.

The tax-return preparers question how robust a service the IRS undertakes when it provides them a PTIN.  As they point out, before our decision in *Loving* invalidated the registered tax-return preparer regulations, the activities the IRS undertook in connection with PTINs were more substantial.  That now-invalidated regime called for the agency to administer competency tests and continuing-education requirements for preparers.  76 Fed. Reg. at 32,287.  After *Loving*, the IRS no longer performs those functions.  Instead, the agency's PTIN-related services are now confined to generating and maintaining a database of PTINs.  Preparer Tax Identification Number (PTIN) User Fee Update, 80 Fed. Reg. 66,792, 66,794 (Oct. 30, 2015).

Those functions, although a slimmed-down version of the PTIN-related services afforded by the agency before *Loving*, still constitute the provision of a service.  To the extent the tax-return preparers believe that the amount of the PTIN fee is out of step with the narrowed scope of remaining PTIN-related functions, those concerns pertain to the reasonableness of the fee, not to whether a fee can be assessed in the first place.  *See*

*Seafarers*, 81 F.3d at 185–86.  There may be force to the tax-return preparers' claim that the fee amount is excessive, but no court has yet considered that claim, and the preparers can press the matter in the proceedings on remand.

2.

Having determined that the IRS provides a service—the provision of a PTIN—in exchange for the challenged fee, we next consider whether that service affords a specific benefit. We conclude it does:  the PTIN helps protect tax-return preparers' identities by allowing them to list a number on returns other than their social security number.

The service provided in exchange for a fee assessed under the Independent Offices Appropriations Act must confer a "specific benefit" on the charged party, *Engine Mfrs. Ass'n*, 20 F.3d at 1180—*i.e.*, a "special benefit . . . above and beyond that which accrues to the public at large," *Ayuda, Inc. v. Attorney Gen.*, 848 F.2d 1297, 1301 (D.C. Cir. 1988).    That understanding comes from the Supreme Court's construction of the Act as authorizing fees rather than taxes, with the former assessed against those specifically benefitting from a particular service and the latter imposed for the benefit of the general public. *See Nat'l Cable*, 415 U.S. at 340–41.

In contending that the "specific benefit" requirement is met here, the IRS reasons in part that agency regulations require tax-return preparers to obtain a PTIN in order to prepare tax returns for compensation, and "[t]he ability to prepare tax returns . . . for compensation is a special benefit." 80 Fed. Reg. at 66,794.  The tax-return preparers respond that, in light of *Loving*'s conclusion that the IRS lacks statutory authority to establish a licensing scheme for preparers, the PTIN fee cannot be justified as offsetting the costs of administering a licensing

regime. Nor, the tax-return preparers argue, can the agency simply create an obligation to obtain a PTIN that is untethered to any underlying licensing system, and then treat satisfaction of that agency-invented requirement as a specific benefit for which a fee may be assessed. *See Seafarers*, 81 F.3d at 186 ("[A]n agency is not free to add extra licensing procedures and then charge a user fee merely because the agency has general authority to regulate in a particular area."); *Cent. & S. Motor Freight Tariff Ass'n v. United States*, 777 F.2d 722, 729 (D.C. Cir. 1985) ("To be legally cognizable, the private benefit must be predicated upon something other than the mere fact of regulation . . . .").

We need not resolve whether satisfying the agency-imposed requirement to obtain a PTIN, standing alone, could qualify as a specific benefit for which the agency may levy a fee. That is because the PTIN requirement is supported by an additional justification advanced by the IRS, one that we find adequate to support the assessment of a PTIN fee: the protection of the confidentiality of tax-return preparers' social security numbers. *See* 75 Fed. Reg. at 60,309; 80 Fed. Reg. at 66,793. And not only does that confidentiality-protection justification independently support assessment of a PTIN fee, but the permissible *amount* of the fee would remain the same regardless of whether it is justified based on that rationale or instead based on the need to satisfy the agency-imposed requirement to obtain a PTIN. In either case, the IRS would need to construct and maintain a PTIN database and provide a PTIN to each tax-return preparer, and it could permissibly recover the costs associated with those functions through the PTIN fee, *see Nat'l Cable Television Ass'n v. FCC*, 554 F.2d 1094, 1107 (D.C. Cir. 1976).

We thus can rest on the confidentiality-protection rationale alone as conferring a specific benefit for which a PTIN fee may

be assessed. The confidentiality advantages associated with the PTIN requirement readily qualify as a specific benefit: without protection of their social security numbers, preparers would face greater risks of identity theft.

The tax-return preparers argue that the IRS cannot rely on the protection of confidential information as a benefit justifying the PTIN fee. They reason that the agency did not specifically invoke the confidentiality concern when it issued the PTIN regulation and thus may not lean on that justification now. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947). We conclude, however, that the IRS adequately relied on the confidentiality protections afforded by PTINs when issuing the PTIN regulations.

The IRS's concern with maintaining the confidentiality of preparers' social security numbers runs throughout the regulatory history of the PTIN requirement and fee. When proposing the PTIN regulations in 2010, the IRS decided to require all tax-return preparers to use a single identifying number so that it could "better collect and track data on . . . preparers." User Fees Relating to Enrollment and Preparer Tax Identification Numbers, 75 Fed. Reg. 43,110, 43,110 (July 23, 2010). The IRS at that point faced a choice: it could use the preparers' social security numbers, or it could instead use PTINs (which many preparers by then had obtained). The agency chose to mandate the use of PTINs.

In opting to require the use of PTINs in 2010, the IRS explained that they provide "an alternative to using the tax return preparers' social security numbers." *Id.* When issuing its final PTIN regulations later that year, the IRS specifically noted the "identity protection currently provided by PTINs," 75 Fed. Reg. at 60,318, and explained that the regulations would benefit "tax return preparers and help maintain the

confidentiality of SSNs," 75 Fed. Reg. at 60,309. The IRS's view is consistent with the concern animating Congress's grant of authority to the IRS to mandate the use of PTINs: "that inappropriate use might be made of a preparer's social security number" under the pre-PTIN scheme. S. Rep. No. 105-174, at 106. And when the IRS reissued the PTIN fee regulations in 2015 after our decision in *Loving* invalidated the registered tax-return preparer program, the agency again explained that "[r]equiring the use of PTINs . . . benefits tax return preparers by allowing them to provide an identifying number on the return that is not an SSN." 80 Fed. Reg. at 66,793.

The tax-return preparers submit that those various statements by the IRS should not count because they appear in the regulatory commentary addressed to the agency's underlying requirement that preparers obtain a PTIN, not in the agency's explanation of the *fee* for providing a PTIN. But the IRS noted "the identity protection currently provided by PTINs" in the portion of the 2010 regulatory commentary addressed to the PTIN fee, not the portion generally discussing the PTIN requirement. *See* 75 Fed. Reg. at 60,318. And in any event, the IRS's explanation of the PTIN requirement bears directly on the specific benefit conferred in exchange for the PTIN fee. After all, the specific-benefit question concerns what benefit, if any, the *PTIN* affords to preparers. And when the IRS observed that a "benefit[]" of the PTIN is that it allows preparers to "provide an identifying number on the return that is not an SSN," 80 Fed. Reg. at 66,793, the agency necessarily conveyed that a benefit preparers receive in exchange for the PTIN fee is the ability to provide a number "that is not an SSN," *id.*

The tax-return preparers question the extent to which the PTIN requirement in fact helps protect preparers' confidential information. In their view, because the IRS already allowed

preparers to omit their social security numbers on the copy of returns provided to the taxpayer, the replacement of social security numbers with PTINs affords no additional protection of preparers' confidential information.

Congress, however, believed otherwise. When Congress in 1998 amended the Internal Revenue Code to allow the IRS to mandate the use of PTINs, the IRS had been allowing preparers to omit their social security numbers from the taxpayers' returns for over twenty years. *See* Rev. Rul. 78-317, 1978-2 C.B. 335. Notwithstanding the longtime availability of that option, Congress authorized the IRS to require PTINs based on concerns "that inappropriate use might be made of a preparer's social security number." S. Rep. No. 105-174, at 106.

Nor did the option to omit social security numbers on the taxpayer's copy of a return mitigate *preparers*' concerns about the exposure of their confidential information. After the IRS in 2010 proposed mandating the use of PTINs, Furnishing Identifying Number of Tax Return Preparer, 75 Fed. Reg. 14,539 (Mar. 26, 2010), several groups of tax-return preparers submitted comments supporting the change due to concerns about protecting the confidentiality of preparers' social security numbers. H&R Block, which in 2010 was the "largest employer of tax return preparers (approximately 120,000)," supported the IRS's proposal to mandate PTINs because PTINs "protect the confidentiality of SSNs." H&R Block, Comment Letter on Proposed Rule Furnishing Identifying Number of Tax Return Preparer, at 1, 6 (Apr. 21, 2010), https://www.regulations.gov/document?D=IRS-2010-0009-0127. The Ohio Society of Certified Public Accountants, representing 23,000 members, likewise approved of the IRS's proposal because "the use of the PTIN as a preparer identifier will minimize confidentiality concerns related to what could

have been an alternative: the use of preparer social security numbers." Ohio Society of CPAs, Comment Letter on Proposed Rule Furnishing Identifying Number of Tax Return Preparer, at 1 (Apr. 26, 2010), https://www.regulations.gov/document?D=IRS-2010-0009-0193. The IRS reasonably agreed with those preparers—and with Congress—that PTINs would help to protect preparers' confidential information.

The tax-return preparers next argue that, even if confidentiality concerns could justify assessing a fee for *initially* providing a PTIN, those concerns cannot justify the IRS's fee to *renew* that number annually. We are unpersuaded. The IRS not only provides a PTIN upon an initial application but also maintains a database that allows preparers to continue using their PTINs in subsequent years. The renewal fee, then, pertains to the agency's continuing efforts in that regard.

To be sure, the tax-return preparers might question whether the amount of the renewal fee bears an adequate relationship to the continuing costs incurred by the IRS to maintain the PTIN database. But those concerns pertain to the amount of the fee, not the antecedent question of whether the fee generally lies within the IRS's statutory authority under the Independent Offices Appropriations Act. On remand, the district court is free to consider arguments concerning the alleged excessiveness of the fee, including whether the renewal fee is "reasonably related" to the "costs which the agency actually incurs" in providing the service, *Nat'l Cable Television Ass'n*, 554 F.2d at 1107, and "the value of the service to the recipient," *Cent. & S. Motor*, 777 F.2d at 729. For purposes of the issue we consider at this stage of the proceedings, though, it is enough for us to conclude that the PTIN requirement specifically benefits tax-return preparers by

helping to protect the confidentiality of their personal information.

3.

Finally, we address whether the IRS provides the service and associated benefit—*i.e.*, the provision of PTINs and the resulting protection of confidential personal information—to "identifiable recipients" rather than to the public at large. *Seafarers*, 81 F.3d at 184. We think it does. Tax-return preparers as a group qualify as identifiable recipients for purposes of justifying a fee assessed under the Independent Offices Appropriations Act.

The tax-return preparers submit that, because essentially *anyone* can obtain a PTIN after our decision in *Loving*, the service and benefit associated with the PTIN extend to the public at large rather than only to specific, identifiable recipients. It does not matter, though, that the service and benefit are theoretically available to the general public. What matters is that the service is provided to, and the corresponding benefit is received by, the specific group of persons who in fact pay the fee.

That understanding draws support from the Supreme Court's identification of passports as an example of a service for which an agency can appropriately charge a fee under the Act. *See New England Power*, 415 U.S. at 349 n.3. Although passports are generally available to the entire citizenry, the Act, as understood by the Supreme Court, enables the State Department to charge a fee to the particular persons who apply for a passport because the service undertaken to process passport applications benefits those persons. *See id.* The same is true of those persons who, in exchange for paying a fee, obtain and renew a PTIN. And because the IRS charges only

those who receive the benefit of a PTIN, the specific benefit supporting the fee extends only to identifiable individuals rather than the public writ large. *See id*. at 349.

In sum, the IRS acted within its statutory authority under the Independent Offices Appropriations Act in charging tax-return preparers a fee to obtain and renew PTINs.

B.

We next address whether the IRS's decision to assess a PTIN fee was arbitrary and capricious. *See* 5 U.S.C. § 706(2)(A). An agency generally must "give adequate reasons for its decisions," and the requirement to give a "satisfactory explanation for its actions" is "satisfied when the agency's explanation is clear enough that its path may reasonably be discerned." *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2125 (2016).

The tax-return preparers principally contend that the IRS's account of its reasons for imposing a PTIN fee does not survive our decision in *Loving*. In the preparers' view, the IRS provided no reasoned justification for the fee separate from justifications that can no longer support the fee after *Loving*. The preparers emphasize that the 2010 regulations originally establishing the PTIN fee stated that the fee would pay for the registered tax-return preparer program, which *Loving* later invalidated. *See* 75 Fed. Reg. at 43,111.

We conclude that the IRS sufficiently rooted its decision to assess a PTIN fee in justifications independent of those rejected in *Loving*. When the IRS reissued the PTIN fee regulations after *Loving*, it explained that PTINs would benefit preparers by protecting their confidential information and would improve tax compliance and administration. 80 Fed.

Reg. at 66,793. *Loving* did not cast doubt on those justifications, which are independent of the registered tax-return preparer program we considered and invalidated there.

With specific regard to assessing a fee for providing a PTIN, the IRS explained that generating PTINs and maintaining a database of PTINs cost substantial sums, and that, in its view, those costs were more appropriately recouped from preparers who obtain a PTIN than from the general public. *See id.* at 66,793–94. Those costs, as explained, can be recovered through the PTIN fee. *See supra* at 13. And the IRS noted that it incurred costs associated with providing PTINs beyond the costs of the services invalidated in *Loving*, and that it was reducing the fee to account for the elimination of those functions deemed beyond its authority in *Loving*. *See* 80 Fed. Reg. at 66,794.

It is true that the IRS's accounting in the regulatory materials of the services paid for by the PTIN fee generally describes certain functions that, depending on their precise scope, could be seen to raise questions about whether they range beyond the IRS's authority after *Loving*—*e.g.*, "background checks," "professional designation checks," and "compliance and IRS complaint activities." 80 Fed. Reg. at 66,794. But the IRS also explained that the fee is "based on direct costs of the PTIN program, which include staffing and contract-related costs for activities, processes, and procedures related to the electronic and paper registration and renewal submissions." *Id.* That explanation survives *Loving* because, as the district court held, the IRS's requirement that preparers obtain and renew a PTIN survives *Loving*. *See Steele*, 260 F. Supp. 3d at 62–63.

The tax-return preparers' concerns that the justifications for the PTIN fee might encompass functions deemed in *Loving*

to fall outside the IRS's regulatory authority can be addressed on remand, when the district court examines whether the amount of the fee is reasonable and consistent with the Independent Offices Appropriations Act. But aside from questions to be considered on remand about whether the *amount* of the PTIN fee impermissibly encompasses functions falling outside the IRS's statutory authority, the IRS's decision to charge a fee at all was adequately grounded in services lying within its authority, and thus was not arbitrary and capricious.

\* \* \* \* \*

For the foregoing reasons, we vacate the judgment of the district court and remand the case for further proceedings.

*It is so ordered.*