# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued December 16, 2024         Decided July 18, 2025

No. 24-5076

ADAM STEELE AND KRYSTAL COMER,
APPELLANTS

v.

UNITED STATES OF AMERICA,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:23-cv-00918)

———

*Allen Buckley* argued the cause and filed the briefs for appellants.

*Robert J. Branman*, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief was *Jennifer M. Rubin*, Attorney.

Before: MILLETT and CHILDS, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* CHILDS.

CHILDS, *Circuit Judge*: Each year, tax return preparers help millions of Americans file their federal income taxes. Federal law requires those preparers to obtain or renew a Preparer Tax Identification Number (PTIN) from the Internal Revenue Service (IRS). I.R.C. § 6109(a)(4). To do so, they must complete Form W-12, which requires users to pay a fee and disclose personal information. Treas. Reg. § 1.6109-2.

Adam Steele and Krystal Comer (Plaintiffs) have long contested these requirements. In 2014, they joined a still-pending class action challenging the IRS's authority to impose user fees for issuing and renewing PTINs. That suit initially included separate claims challenging the PTIN renewal process itself, and the amount of information Form W-12 requires for that renewal. Class counsel later withdrew those claims.

Plaintiffs now seek a second bite at the apple by attempting to revive their abandoned claims in a parallel suit. The district court dismissed their complaint for violating the rule against claim-splitting. On appeal, Plaintiffs insist the court erred in dismissing their case. The government disagrees and adds that the Paperwork Reduction Act (PRA) bars judicial review of Plaintiffs' challenge to the amount of information the IRS collects through Form W-12.

We hold that the PRA precludes review only of the Director's decision to approve, disapprove, or take no action on an agency collection of information—not of the agency's legal authority to demand information. Plaintiffs' suit still cannot proceed. Claim-splitting bars duplicative litigation between the same parties asserting the same claims, even absent a final judgment by the court with jurisdiction over the first litigation. Plaintiffs' claims were raised, then withdrawn; Plaintiffs were later denied leave to amend in the class action; they then refiled the same claims in this litigation. We affirm.

3

**I.**

**A.**

**1.**

Writing in 1789, Benjamin Franklin famously remarked that "nothing can be said to be certain, except death and taxes." Letter from Benjamin Franklin, President, to Jean Baptiste Leroy (Nov. 13, 1789), *in* THE WRITINGS OF BENJAMIN FRANKLIN 69, 69 (Albert H. Smyth ed., 1907). True to Franklin's words, the Sixteenth Amendment authorized the federal income tax, U.S. Const. amend. XVI, prompting Congress to enact the Revenue Act of 1913, which required individuals to file returns. Revenue Act of 1913, ch. 16, § II, 38 Stat. 114, 166–81. That obligation ultimately spurred today's widespread reliance on professional tax assistance.

In 1976, Congress authorized the Treasury Secretary to require that returns filed by paid preparers "bear such identifying number . . . as may be prescribed." Tax Reform Act of 1976, Pub. L. No. 94-455, § 1203(d), 90 Stat. 1520, 1691 (codified at I.R.C. § 6109(a)). A "tax return preparer" is any person paid to prepare tax returns or refund claims, or who employs others to do so. I.R.C. § 7701(a)(36)(A). Preparers initially signed returns using their social security numbers, *see* § 1203(d), 90 Stat. at 1691, until privacy concerns arose about "inappropriate use" of such information. S. Rep. No. 105-174, at 106 (1998).

Congress responded in 1998 by authorizing alternative identifiers. IRS Restructuring and Reform Act of 1998, Pub. L. No. 105-206, § 3710, 112 Stat. 685, 779. The IRS approved PTINs the next year, which remained voluntary to use in place of the social security number for over a decade. Furnishing

Identifying Number of Income Tax Return Preparer, 64 Fed. Reg. 43,910, 43,911 (Aug. 12, 1999).

That changed in 2010, when the Treasury Department issued regulations requiring all paid preparers to obtain and annually renew PTINs, for a fee. Furnishing Identifying Number of Tax Return Preparer, 75 Fed. Reg. 60,309, 60,309–10 (Sept. 30, 2010); User Fees Relating to Enrollment and Preparer Tax Identification Numbers, 75 Fed. Reg. 60,316, 60,317–19 (Sept. 30, 2010). In 2011, additional regulations required non-attorneys, CPAs, or enrolled agents to pass exams and take annual training to remain "registered tax return preparers." Regulations Governing Practice Before the IRS, 76 Fed. Reg. 32,286, 32,286–88 (June 3, 2011).

Preparers challenged the changes resulting from the 2011 regulations. The district court ruled in their favor, and we affirmed, holding that the IRS "may not unilaterally expand its authority through such an expansive, atextual, and ahistorical reading of Section 330." *Loving v. IRS*, 917 F. Supp. 2d 67 (D.D.C. 2013), *aff'd*, 742 F.3d 1013, 1022 (D.C. Cir. 2014). While *Loving* invalidated the IRS's licensing rules, it left the PTIN renewal requirement intact. *Montrois v. United States*, 916 F.3d 1056, 1068 (D.C. Cir. 2019). Thereafter, preparers shifted focus to whether the IRS could demand their information at all. That question turns on the statutory limits governing federal information collection.

**2.**

The PRA imposes requirements on agencies when they collect information from the public. *See* 44 U.S.C. §§ 3501–3521. Congress enacted the statute to "minimize the paperwork burden" and promote coordinated, efficient information policies. *Id.* § 3501(1)–(7). A "collection of

information" includes agency requests for identical data from ten or more people, including standardized forms and recordkeeping. *See id.* § 3502(3); 5 C.F.R. § 1320.3(c).

A valid collection must display an Office of Management and Budget (OMB) control number and expiration date. *See* 44 U.S.C. § 3507(a); 5 C.F.R. § 1320.5(b)(1). Agencies must inform respondents of the purpose, whether a response is required, and the expected burden. 44 U.S.C. § 3506(c)(1)(B)(iii); 5 C.F.R. § 1320.8(b)(3). The statute includes a "public protection" provision: if a collection lacks a valid OMB control number, "no person shall be subject to any penalty for failing to comply." 44 U.S.C. § 3512(a). Once approved and assigned a control number, the PRA bars judicial review of the Director's decision to authorize the collection of information. *See id.* § 3507(d)(6).

Form W-12 is a "collection of information" subject to the PRA. *See id.* §§ 3501(1), 3507(a), 3512(a); *see also* Treas. Reg. § 1.6109-2(d)–(e). In 2010, the IRS sought emergency OMB approval to implement Form W-12, which replaced the prior version. *See* Information Collection Request, Form W-12, ICR Reference No. 2010008-1545-048 (2010), *available at* https://perma.cc/9WAD-HL2M. OMB approved the submission and assigned it Control Number 1545-2190. *Id.* The IRS later pursued notice and comment rulemaking.[1] Each version of Form W-12 from 2010 to 2022 displays a valid OMB control number.

---

[1] *See e.g.*, 75 Fed. Reg. 70971 (Nov. 19, 2010); 76 Fed. Reg. 14458 (Mar. 16, 2011); 78 Fed. Reg. 76892 (Dec. 19, 2013); 79 Fed. Reg. 29841 (May 23, 2014); 82 Fed. Reg. 18212 (Apr. 17, 2017); 82 Fed. Reg. 49480 (Oct. 25, 2017); 85 Fed. Reg. 81286 (Dec. 15, 2020); 86 Fed. Reg. 16657 (Mar. 30, 2021).

**B.**

This appeal arises from a Federal Rule of Civil Procedure 12(b)(6) dismissal. The "relevant facts are those alleged in the complaint, taken in the light most favorable to the plaintiff[s] and with all reasonable inferences drawn in [their] favor." *Hurd v. District of Columbia*, 864 F.3d 671, 675 (D.C. Cir. 2017).

In 2014, Adam Steele and Brittany Montrois (Class Plaintiffs) filed a putative class action challenging the IRS's PTIN regulations. J.A. 63–95. They alleged, among other things, that the IRS lacked authority to charge user fees, require PTIN renewal (PTIN renewal claim), and that IRS Form W-12 requested more information than necessary (excessive questioning claim). J.A. 75–78 ¶¶ 46–57, 88 ¶¶ 98–99, 90 ¶ 107. The complaint sought declaratory relief halting PTIN renewal requirements and fees, and an injunction limiting the IRS to collecting only necessary information once. J.A. 92, 94.

In 2015, the district court consolidated the class action with a related case and appointed Motley Rice LLC as interim class counsel. *See Steele v. United States (Steele I)*, No. 14-cv-1523, 2020 WL 7123100, at *1 (D.D.C. Dec. 4, 2020). Motley Rice amended the complaint to challenge the user fees only, omitting the PTIN renewal and excessive questioning claims. J.A. 96–111. As the attorney that initiated the class action for Mr. Steele and Ms. Montrois, Mr. Allen Buckley objected to Motley Rice's strategic choice to withdraw those claims.[2]

---

[2] Allen Buckley is both an attorney and a licensed certified public accountant. J.A. 47. Though the class action claims apply to him as a preparer, Mr. Buckley is excluded from the suit due to his role as counsel. J.A. 66 ¶ 13. Assisted by another attorney, J.A. 95, he filed *Steele I* on behalf of Class Plaintiffs. Oral Arg. Tr. 7:5–7. Mr.

In 2017, the district court granted partial summary judgment for the Class Plaintiffs. *See Steele I*, 260 F. Supp. 3d 52, 68 (D.D.C. 2017), *vacated* and *remanded sub nom. Montrois v. United States*, 916 F.3d 1056 (D.C. Cir. 2019).[3] After vacatur and remand by this Court, Mr. Buckley represented Mr. Steele, who moved for leave to amend the complaint to revive the earlier abandoned PTIN renewal and excessive questioning claims. *See Steele I*, 2020 WL 7123100, at *4–6. The district court denied that request, citing undue delay, prejudice to the government, and futility. *See id.* at *6.

In April 2023, while *Steele I* remained pending, Mr. Buckley filed a separate lawsuit on behalf of Mr. Steele, reprising the abandoned claims. J.A. 43–44 ¶¶ 67–70, 44–45 ¶¶ 1–4. In May 2023, Mr. Buckley amended the complaint to add Ms. Comer. J.A. 29–30. The district court dismissed the suit under the rule against claim-splitting, holding that Plaintiffs' complaint improperly duplicated claims raised and withdrawn in the ongoing class litigation. *See Steele v. United States (Steele II)*, No. 23-cv-0918, 2024 WL 1111639, at *12–13 (D.D.C. Mar. 14, 2024). Plaintiffs timely appealed.

## II.

We have jurisdiction to review the district court's judgment. 28 U.S.C. § 1291.

---

Buckley later solicited Motley Rice LLC to serve as class counsel given their experience with class actions. *Id.* 7:9–16.

[3] Following our decision in *Montrois*, Mr. Buckley moved for a preliminary injunction to bar the IRS from requiring PTIN renewals. *See Steele I*, 2020 WL 7123100, at *2. Motley Rice LLC opposed the motion alongside the government, which argued that the request exceeded the scope of the amended complaint. *Id.* The district court denied the motion. *Id.* at *1.

8

## III.

As an alternative ground to affirm, the government argues that the district court lacked subject matter jurisdiction because the PRA bars judicial review of Plaintiffs' excessive questioning claim. 44 U.S.C. § 3507(d)(6). The district court did not address that argument. Ordinarily, we refrain from resolving issues the district court has not decided in the first instance. *See Pollack v. Hogan*, 703 F.3d 117, 121 (D.C. Cir. 2012). But the government squarely raised it below in its motion to dismiss. *See* Resp't's Mot. Dismiss Br. 6–9. Because federal appellate courts may consider any issue that was either "pressed or passed upon below," *Blackmonn-Malloy v. United States Capitol Police Bd.*, 575 F.3d 699, 707 (D.C. Cir. 2009) (quoting *United States v. Williams*, 504 U.S. 36, 41 (1992)), we proceed to untangle the legal knot the government has presented. Whether a statute bars judicial review is a legal question reviewed de novo. *See Porzecanski v. Azar*, 943 F.3d 472, 482 (D.C. Cir. 2019); *Zhu v. Gonzales*, 411 F.3d 292, 294 (D.C. Cir. 2005).

Although sovereign immunity bars suits against the United States absent an express waiver, *Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 260–61 (1999), the APA supplies a general waiver for suits challenging final agency action, 5 U.S.C. § 702. However, that waiver is unavailable where "statutes preclude judicial review." 5 U.S.C. § 701(a)(1); *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 345 (1984). There is a "strong presumption that Congress intends judicial review of administrative action," rebuttable only by "clear and convincing evidence of a contrary legislative intent." *Amador Cnty. v. Salazar*, 640 F.3d 373, 379–80 (D.C. Cir. 2011) (quoting *Bowen v. Mich. Acad. of Fam. Physicians*, 476 U.S. 667, 671–72 (1986)).

The PRA provides that the "decision by the Director [of OMB] to approve or not act upon a collection of information contained in an agency rule shall not be subject to judicial review." 44 U.S.C. § 3507(d)(6). The government contends that, because the IRS secured OMB approval and displayed a valid control number, the district court lacked jurisdiction to assess the scope of information required by Form W-12. Plaintiffs disagree. They argue that even full compliance under the PRA cannot confer substantive authority Congress never granted. In their view, agencies may not collect more than the statute permits, regardless of OMB approval. Plaintiffs are correct that the PRA's jurisdictional bar is inapplicable to challenges that question an agency's statutory authority to act.

We begin with the text. The PRA speaks to the OMB Director's "decision." *Id.* A plain language reading insulates the Director's discretionary judgment to *allow* or *remain silent* on an agency's proposed collection. It does not bar judicial review of agency conduct taken after such approval. The PRA imposes requirements on how agencies collect information and assigns oversight responsibility to the OMB Director. While it adds conditions to the collection process, it does not say anything about whether an agency possesses statutory authority to demand particular information. Thus, where a statute is silent, we presume Congress did not displace the courts' ordinary role in determining whether an agency has acted within the bounds of its legal authority. *See Salazar*, 640 F.3d at 379–80.

That reading accords with the PRA's structure. Congress enacted the PRA to improve coordination, efficiency, and transparency in agency information practices. *See* 44 U.S.C. § 3501(1)–(7). The statute requires agencies to seek OMB approval before imposing collections on the public. *See id.* § 3507; 5 C.F.R. § 1320.5(a). That framework includes

meaningful safeguards. The Director must determine whether a proposed collection is "necessary for the proper performance of the functions of the agency" and has "practical utility," and must both solicit public comment and respond to petitions for review. 44 U.S.C. §§ 3508, 3517(a)–(b). Individuals need not respond to collections lacking a valid control number. *Id.* § 3512(a).

However, the PRA does not authorize *what* information an agency may collect, but rather governs the process authorizing *how* any agency collects information that suits its objectives. It prescribes a framework to ensure oversight, not to expand substantive power. If OMB's clearance were treated as an unreviewable license to exceed statutory limits, it would invert the statute's purpose and design. The PRA neither states nor supports that result.

That distinction is critical. The judgment that a collection has "practical utility" lies with the Director of OMB, not with the courts. *Id.* § 3508. Indeed, courts may not second guess that determination. But they retain the responsibility to decide whether the agency acted within the scope of its statutory authority. That inquiry determines whether the APA's waiver of sovereign immunity applies. In this instance, it does.

Plaintiffs' suit does not challenge the Director's approval of Form W-12. Tellingly, Plaintiffs do not question the validity of the Director's decision or allege defects in the PRA process. They allege that "[r]equiring renewal of PTINs is an act beyond [the IRS's] pertinent statutory authority." J.A. 31 ¶ 5. Their claim is that, even with a valid control number, the IRS exceeded the limits of I.R.C. § 6109(c) by demanding more information than necessary to assign or renew a PTIN. *Cf.* J.A. 40 ¶ 56 (identifying allegedly necessary information); J.A. 41 ¶ 59 (listing the form's additional requirements). That is a

substantive challenge to the agency's authority, not an objection to how it obtained OMB approval. Accordingly, Plaintiffs' excessive questioning claim falls within the APA's waiver. *See* 5 U.S.C. §§ 702, 706.

To be sure, Plaintiffs describe, in their complaint, the form's questions as "licensing-type" and burdensome. J.A. 42 ¶ 61. That criticism might support a petition under 44 U.S.C. § 3517(b), which authorizes challenges to unnecessary or unduly burdensome collections. But Plaintiffs do not invoke that provision or claim a violation of its procedures. And the government has offered no persuasive basis—in briefing or at argument—to suggest that the PRA forecloses judicial review of an agency's statutory authority to collect information. Courts must take care not to let parties sidestep the PRA's constraints by recasting them as statutory challenges—or the reverse.

The government's own case confirms the distinction. In *Tozzi v. EPA*, the plaintiffs argued that the agency's submission to OMB was procedurally deficient and that the Director's approval should be set aside. 148 F. Supp. 2d 35, 42–48 (D.D.C. 2001). That claim targeted OMB's judgment under the PRA and was thus barred by § 3507(d)(6). *Id.* at 47–48. Plaintiffs here make no such challenge. Their claim is that the IRS lacked authority to request the information in the first place—an analytically distinct inquiry *Tozzi* left untouched.

*Hyatt v. Office of Mngt. & Budget* reinforces the point. There, the Ninth Circuit held that § 3507(d)(6) bars review only of OMB's decision to approve a collection "contained in an agency rule," and rejected the notion that such approval insulates an agency from review of its statutory authority. 908 F.3d 1165, 1171–72 (9th Cir. 2018). That reasoning applies here. Plaintiffs do not challenge OMB's action. They argue

that, even with approval, the IRS exceeded § 6109(c) by collecting more information than necessary to assign a PTIN. *Hyatt* confirms that such a claim is not subject to the PRA's bar on judicial review.

Therefore, we hold that the PRA does not bar judicial review of Plaintiffs' excessive questioning claim.

**IV.**

Claim-splitting operates as a corollary to claim preclusion. Where claim preclusion bars successive litigation following a final judgment, claim-splitting prohibits duplicative litigation filed before judgment. That is the posture presented here.

Plaintiffs initiated *Steele II* to relitigate causes of action that were voluntarily withdrawn and later denied reinstatement in *Steele I*. That tactic cannot seclude their complaint from dismissal. As the Tenth Circuit explained, "the fact that plaintiff[s] w[ere] denied leave to amend does not give [them] the right to file a second lawsuit based on the same facts." *Hartsel Springs Ranch of Colo., Inc. v. Bluegreen Corp.*, 296 F.3d 982, 989 (10th Cir. 2002) (citation omitted). That principle accords with the rule long applied in this Circuit: Parties may not "maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant." *Zerilli v. Evening News Ass'n*, 628 F.2d 217, 222 (D.C. Cir. 1980) (citation omitted).

Every circuit to address claim-splitting has adopted a similar view.[4] Consistent with longstanding precedent, we

---

[4] *See, e.g., Armadillo Hotel Grp., LLC v. Harris*, 84 F.4th 623, 628 (5th Cir. 2023); *Kezhaya v. City of Belle Plaine*, 78 F.4th 1045, 1050 (8th Cir. 2023); *Mendoza v. Amalgamated Transit Union Int'l*, 30

hold that the claim-splitting rule provides a valid, independent basis for dismissal, even absent a final judgment. Dismissal was therefore proper.

**A.**

Duplicative suits are typically dismissed under the doctrine of res judicata, or claim preclusion. That doctrine forecloses subsequent litigation where there has been prior adjudication "(1) involving the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction." *Smalls v. United States*, 471 F.3d 186, 192 (D.C. Cir. 2006) (citations omitted). The district court did not apply claim preclusion here because *Steele I* had not reached final judgment on the issue of PTIN renewal. *See Steele II*, 2024 WL 1111639, at *11. Recognizing, however, that Plaintiffs had asserted and then withdrawn the same claims in the earlier suit, the court turned instead to the closely related rule against claim-splitting, which borrows from claim preclusion to bar duplicative litigation filed before final judgment. *Id.*

Claim-splitting obliges a plaintiff to "assert all . . . causes of action arising from a common set of facts in one lawsuit." *Katz v. Gerardi*, 655 F.3d 1212, 1217 (10th Cir. 2011); *see also*

---

F.4th 879, 886 (9th Cir. 2022); *Scholz v. United States*, 18 F.4th 941, 952 (7th Cir. 2021); *Church Joint Venture, LP v. Blasingame*, 817 F. App'x 142, 146 (6th Cir. 2020); *Vanover v. NCO Fin. Servs., Inc.*, 857 F.3d 833, 841–42 (11th Cir. 2017); *Kanciper v. Suffolk Cnty. Soc'y for the Prevention of Cruelty to Animals*, 722 F.3d 88, 92 (2d Cir. 2013); *Katz v. Gerardi*, 655 F.3d 1212, 1217–18 (10th Cir. 2011); *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 273 F. App'x 256, 265 (4th Cir. 2008); *Kale v. Combined Ins. Co. of Am.*, 924 F.2d 1161, 1166 (1st Cir. 1991).

18 Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, FEDERAL PRACTICE AND PROCEDURE § 4406 & n.20 (3d ed. 2025). "Whether two cases involve the same cause of action turns on whether they share the same 'nucleus of facts.'" *Drake v. FAA*, 291 F.3d 59, 66 (D.C. Cir. 2002) (quoting *Page v. United States*, 729 F.2d 818, 820 (D.C. Cir. 1984)). This Court follows the Second Restatement of Judgments' "transactional approach." *U.S. Indus., Inc. v. Blake Const. Co.*, 765 F.2d 195, 205 (D.C. Cir. 1985); Restatement (Second) of Judgments § 24(1) (1982). In applying that framework, courts consider "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Apotex, Inc. v. Food & Drug Admin.*, 393 F.3d 210, 217 (D.C. Cir. 2004) (quoting *I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co.*, 723 F.2d 944, 949 n. 5 (D.C. Cir. 1983)). The bar thus extends not only to claims that were actually litigated, but also to those that should or could have been. *See* 18 James Wm. Moore et al., Moore's Federal Practice - Civil § 131.20[1] (2025).

The parties dispute the appropriate standard of review. Plaintiffs invoke the default rule that Rule 12(b)(6) dismissals are reviewed de novo. *See Hurd*, 864 F.3d at 678 (citing *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1128 (D.C. Cir. 2015)). The government, by contrast, urges the abuse of discretion standard. Our sister circuits are divided. Some analogize claim-splitting to res judicata and apply de

novo review.[5]  Others treat it as a matter of case management and afford district courts greater leeway.[6]

We need not resolve that disagreement.  The dismissal withstands scrutiny under either standard.  The rule against claim-splitting safeguards vital institutional values.  It aims to "conserve judicial resources, avoid inconsistent results, engender respect for judgments of predictable and certain effect," and "prevent serial forum shopping and piecemeal litigation." *Hardison v. Alexander*, 655 F.2d 1281, 1288 (D.C. Cir. 1981).  It also "shield[s] parties from vexatious concurrent or duplicative litigation." *Katz*, 655 F.3d at 1218.  The Supreme Court has long emphasized these systemic interests in discouraging duplicative proceedings.  *See, e.g.*, *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976); *The Haytian Republic*, 154 U.S. 118, 124 (1894).  Whether framed as a rule of case management or as an outturn of finality and fairness, claim-splitting is a proper basis for dismissal under Rule 12(b)(6).

Applying the transactional approach, claim-splitting requires prior litigation (1) "involving the same claims or cause of action," (2) "between the same parties or their privies," and (3) before "a court of competent jurisdiction." *See Smalls*, 471 F.3d at 192; *Katz*, 655 F.3d at 1218–19 (explaining that "the test for claim splitting is not whether there is finality of judgment, but whether the first suit, assuming it were final, would preclude the second suit.").

---

[5] *See, e.g.*, *Kale*, 924 F.2d at 1165; *Sensormatic Sec. Corp.*, 273 F. App'x at 264; *Mendoza*, 30 F.4th at 886.

[6] *See, e.g.*, *Armadillo Hotel Grp.*, 84 F.4th at 628; *Scholz*, 18 F.4th at 950–51; *Church Joint Venture, L.P.*, 817 F. App'x at 146; *Katz*, 655 F.3d at 1217; *Vanover*, 857 F.3d at 837.

*First*, *Steele II* plainly arises from the same nucleus of facts as *Steele I*. Both suits challenge the same statutory and regulatory framework governing PTIN renewal and information disclosure. *Compare* J.A. 43 ¶¶ 67–68, *with* J.A. 75–76 ¶¶ 46–52. Both suits assert the same core claims regarding PTIN renewal and excessive questioning. *Compare* J.A. 44 ¶¶ 69–70, *with* J.A. 90 ¶ 107. Plaintiffs originally asserted these claims in *Steele I*, voluntarily withdrew them following appointment of new class counsel, and were later denied leave to amend. *See Steele II*, 2024 WL 1111639, at *2–4.

At oral argument, Plaintiffs' counsel conceded as much that the two suits rest on the same operative facts and legal theories. Oral Arg. Tr. 4:18–25, 6:8–15. And Plaintiffs identify no intervening change in law or fact that might excuse a second round of litigation. *See* Pet'rs' Br. 44–45. The claims at issue would have formed a convenient trial unit in *Steele I* and fall well within the scope of what the parties expected to resolve in that litigation. That is enough to render them part of the same "claim" under Restatement § 24. *See Apotex, Inc.*, 393 F.3d at 217.

*Second*, Plaintiffs are the same parties in both suits. Mr. Steele is a named plaintiff in *Steele I*, and Ms. Comer is a certified class member. *See Steele II*, 2024 WL 1111639, at *9; J.A. 64. Though Mr. Buckley is not formally a party, his appearance as counsel in both actions underscores the duplicative nature of this suit.

*Third*, both suits were brought before the same court of competent jurisdiction.

In short, *Steele II* is not just a rerun—it is an impractical detour designed to bypass the consequences of a prior strategic decision. While claim preclusion would only apply upon entry of final judgment, the claim-splitting rule blocks Plaintiffs' restart in *Steele II*.

**B.**

Plaintiffs resist the district court's dismissal on several grounds. They challenge the validity of claim-splitting as a basis for dismissal under Rule 12(b)(6), assert that a procedural bar exempts this litigation, and contend that they lacked a fair opportunity to litigate the claims. We address each in turn.

**1.**

Claim-splitting is a proper ground for dismissal under Rule 12(b)(6). Courts have long recognized that dismissal is appropriate when a complaint establishes on its face a legal bar to relief. *See Jones v. Bock*, 549 U.S. 199, 215 (2007); *Heck v. Humphrey*, 512 U.S. 477, 487–89 (1994). Rule 12(b)(6) authorizes dismissal where a complaint "fail[s] to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6). That determination turns not only on pleading defects, but also on substantive legal impediments evident from the complaint itself. *See Jones*, 549 U.S. at 215 (citing *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001)) ("Whether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground," including affirmative defenses apparent on the face of the complaint).

Claim preclusion is one such defense. *See Taylor v. Sturgell*, 553 U.S. 880, 907 (2008) (first citing Fed. R. Civ. P. 8(c); and then citing *Blonder–Tongue Labs., Inc. v. Univ. of Ill.*

*Found.*, 402 U.S. 313, 350 (1971)). Although the burden remains on the party invoking it, *see Taylor*, 553 U.S. at 907, a complaint that discloses all necessary elements of preclusion is ripe for dismissal. The same is true of claim-splitting, a close doctrinal cousin that likewise bars duplicative litigation arising from a common nucleus of operative fact. *See* Wright, Miller & Cooper, *supra* § 4406 n.20 ("[C]laim-splitting analysis supports dismissal if claim preclusion would arise from a final judgment in the first action.").

Courts have repeatedly affirmed that claim-splitting is a proper basis for Rule 12(b)(6) dismissal when the duplicative nature of the action is plain from the face of the pleadings or the judicially noticeable record. *See, e.g., Vanover*, 857 F.3d at 836 & n.1, 841–42. Such dismissal is proper even in the absence of a final judgment in the first suit.

All the same, claim-splitting addresses not merely when litigation must end, but also how it must proceed. In operation, it functions as a substantive defect in the plaintiff's entitlement to relief—exactly the kind of legal insufficiency that Rule 12(b)(6) is meant to catch. When, as here, Plaintiffs attempt to reassert claims that they previously raised, voluntarily withdrew, and failed to revive through amendment, their complaint fails to state a claim as a matter of law. That deficiency is clear from the face of the complaint and the judicially noticeable docket in *Steele I*. Plaintiffs may not transform a previously forfeited claim into a new lawsuit simply by rewrapping it in fresh paper. The Federal Rules do not afford litigants a revolving door to recycle abandoned claims as if the first round of litigation never happened.

19

**2.**

Plaintiffs point to *Whole Woman's Health v. Hellerstedt*, 579 U.S. 582 (2016), to argue that claim preclusion cannot apply where procedural barriers foreclosed resolution of their claims in earlier litigation. *See* Pet'r's Br. 29–33. But *Hellerstedt* does not stretch nearly that far. There, the Court rejected a preclusion defense because the second suit challenged a distinct statutory requirement—the surgical-center provision of Texas House Bill 2—that had not been raised or litigated in the prior case involving the admitting-privileges requirement. *Hellerstedt*, 579 U.S. at 604 ("[T]he surgical-center provision and the admitting-privileges provision are separate, distinct provisions of H.B.2. They set forth two different, independent requirements with different enforcement dates."); *id.* ("This Court has never suggested that challenges to two different statutory provisions that serve two different functions must be brought in a single suit.").

That distinction mattered. The Court emphasized that the two statutory provisions triggered separate legal obligations. *Id.* at 604–05. The challenged surgical-center provision had not even been implemented by the time of the earlier suit, and the plaintiffs reasonably anticipated that the forthcoming regulations might exempt them. *Id.* at 605. In other words, the later filed claim arose from a "meaningful difference[]," *id.* at 604, not just a later procedural maneuver.

Not so here. Plaintiffs seek to relitigate claims arising under the same statutory provision, I.R.C. § 6109, and based on the same agency conduct—the use of Form W-12 to implement the PTIN system—that they previously asserted, voluntarily withdrew, and were denied leave to amend in *Steele I*. That is a far cry from the factually and legally distinct claims at issue in *Hellerstedt*. *See* 579 U.S. at 604–06.

Indeed, the concerns articulated in *Hellerstedt* do not apply to Plaintiffs' claims. The Court warned that construing the doctrine to require simultaneous challenge to every provision of a statutory scheme "would encourage a kitchen-sink approach to any litigation" and was "less than optimal—not only for litigants, but for courts." *Id.* at 605. But that concern arises only where different statutory provisions give rise to different legal claims. When the same plaintiffs refile the same claims under the same statute in the same court, the claim-splitting rule bars the second bite. Nothing in *Hellerstedt* says otherwise.

**3.**

We do not take lightly the denial of leave to amend, particularly where a party has not yet had a meaningful opportunity to litigate her claims. But where the plaintiff had a fair chance to press those claims in the earlier action, the rule against claim-splitting bars their revival—even when the district court denied leave to amend. *See Hatch v. Trail King Indus., Inc.*, 699 F.3d 38, 45 (1st Cir. 2012) ("It is axiomatic that claim preclusion doctrine requires a party to live with its strategic choices" (cleaned up)) (quoting *Airframe Sys., Inc. v. Raytheon Co.*, 601 F.3d 9, 11 (1st Cir. 2010)). The only remaining question is whether the newly filed claims arise from "the same conduct, transaction or event" and could have been raised earlier. *See Curtis v. Citibank*, 226 F.3d 133, 139 (2d Cir. 2000); *see also N. Assurance Co. of Am. v. Square D Co.*, 201 F.3d 84, 87–88 (2d Cir. 2000); *cf. King v. Hoover Grp., Inc.*, 958 F.2d 219, 222–23 (8th Cir. 1992) ("It is well settled that denial of leave to amend constitutes res judicata on the merits of the claims which were the subject of the proposed amended pleading.") (citations omitted).

This case fits that rule hand in glove. Plaintiffs previously raised these same claims in *Steele I*, voluntarily dismissed them, and were denied leave to replead. They cannot now sidestep that procedural history by repackaging the same legal theory in a new complaint. The claim-splitting rule bars precisely that form of duplicative litigation. Whether the claims were fully adjudicated is beside the point; what matters is that they could have been. *See* Moore's *supra* § 131.20[1].

The point is not just procedural housekeeping. It reflects a longstanding principle of litigation integrity: a plaintiff may not "split up his demand and prosecute it by piecemeal," holding back claims to repackage them for another turn at the courthouse door. *Vanover*, 857 F.3d at 841 (quoting *Greene v. H&R Block E. Enters., Inc.*, 727 F. Supp. 2d 1363, 1367 (S.D. Fla. 2010) (quoting *Stark v. Starr*, 94 U.S. 477, 485 (1876))); *see also Hardison*, 655 F.2d at 1288. As this Court has explained, "a party who once has had a chance to litigate a claim before an appropriate tribunal usually ought not to have another." *SBC Commc'ns Inc. v. FCC*, 407 F.3d 1223, 1229 (D.C. Cir. 2005) (cleaned up). Nor is a new lawsuit a proper vehicle for appealing an interlocutory loss.

### C.

The presence of a certified class raises a subsidiary issue. Courts have long exercised caution when applying preclusion doctrines to class actions, mindful that procedural constraints or questions about the adequacy of representation may cabin the claims a class can pursue. *See Taylor*, 553 U.S. at 893–95; *Smith v. United States*, 387 F. Supp. 3d 8, 19 (D.D.C. 2019). Some courts have reasoned that claim-splitting "generally does not apply to class actions." *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 256 F.R.D. 586, 597 (N.D. Ill. 2009). Others have suggested the opposite—that splitting claims "is generally

prohibited by the doctrine of res judicata, particularly in class actions." *Brewer v. Lynch*, No. 08-cv-1747, 2015 WL 13604257, at *10 (D.D.C. Sept. 30, 2015), *aff'd* 863 F.3d 861 (D.C. Cir. 2017).

That divergence reflects a deeper concern: a class action may operate, functionally, as "a court of limited jurisdiction in which only certain claims and certain forms of relief are available." Moore *supra* § 131.40 (citing Restatement (Second) of Judgments § 26(1)(c)). In those instances, at least one court has hesitated to apply preclusion doctrines where doing so might bind class members to a judgment that compromised claims they never had the opportunity to pursue. *See Makor Issues & Rights, Ltd.*, 256 F.R.D. at 597–98.

But those equitable concerns are not in play here. As discussed, Mr. Steele and Ms. Comer were members of the *Steele I* class, which had every opportunity to assert the very claims now raised in *Steele II*. And indeed, it did. Those claims were voluntarily withdrawn, and Class Plaintiffs' later attempt to reassert them through amendment was denied. Beyond that, Plaintiffs make no claim that the boundaries of the *Steele I* class, or any other feature of class procedure, stood in the way of presenting their claims in that case. Whatever prudential limits may apply to class action preclusion where parties are limited in what claims they can pursue, those limits do not bar application of claim-splitting to plaintiffs who had every opportunity to litigate their claims the first time around. That applies in full force here.

**\*\*\*\***

With all elements satisfied, this duplicative suit falls squarely within the claim-splitting rule's reach. A far cry from an abuse of discretion or legal error, the district court's ruling

reflects a sound exercise of judicial authority to prevent strategic end runs around procedural rulings and to preserve the integrity of the adjudicative process.

## V.

For the foregoing reasons, we affirm.

*So ordered.*